**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PATRICIA SMITH and CHARLES WOODS,

     Plaintiffs,

       v.

HILLARY RODHAM CLINTON,

     Defendant.

No. 1:16-cv-01606-ABJ

**DEFENDANT HILLARY RODHAM CLINTON'S MOTION TO DISMISS**

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Amy Mason Saharia (D.C. Bar No. 981644)
Stephen L. Wohlgemuth (D.C. Bar No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Defendant Hillary Rodham Clinton*

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................1

BACKGROUND .......................................................................................................................2

STANDARD OF REVIEW .......................................................................................................6

ARGUMENT ............................................................................................................................6

I.     Plaintiffs Fail To State a Claim for Defamation. ...............................................................6

       A.     Plaintiffs Do Not Allege That Secretary Clinton's Statements Are
              Defamatory. ...........................................................................................................8

       B.     Plaintiffs Do Not Allege That Secretary Clinton's Statements Are
              Provably False........................................................................................................11

       C.     Plaintiffs Do Not Allege That Secretary Clinton's Statements Were Made
              Without Privilege. .................................................................................................13

       D.     Plaintiffs Do Not Allege Special Harm. ...............................................................16

II.    Plaintiffs Fail To State a Claim for False Light................................................................17

III.   Plaintiffs Fail To State a Claim for Intentional Infliction of Emotional Distress..............18

IV.    Plaintiffs Fail To State a Claim for Negligent Infliction of Emotional Distress. .............19

CONCLUSION........................................................................................................................20

## INTRODUCTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and this Court's October 21, 2016 Order, Defendant and former Secretary of State Hillary Rodham Clinton hereby moves to dismiss Plaintiffs' claims for defamation, false light, intentional infliction of emotion distress, and negligent infliction of emotional distress. Plaintiffs are each a parent to a victim of the tragic attack on American facilities in Benghazi, Libya on September 11–12, 2012. As this Court is no doubt aware, the Benghazi attack has been a topic of considerable public discussion in this Nation since its occurrence. The attack has been the subject of eight separate Congressional investigations. Bipartisan investigations have specifically considered whether the United States Government deceived the public about the cause of the attack in its immediate aftermath, and none found intentional deception. Rather, it has become clear that, in the immediate aftermath of the attack, intelligence about the cause of the attack was "conflicting." Ex. A at 24 (U.S. House of Representatives Permanent Select Committee on Intelligence, *Investigative Report on the Terrorist Attacks on U.S. Facilities in Benghazi, Libya* (Nov. 21, 2014)). To this day, "significant" questions "regarding the identities, affiliations and motivations of the attackers" remain unanswered. *Id.* at 25.

This lawsuit is an attempt to relitigate this question in the guise of a "defamation" claim. Shortly after the Benghazi attack, Secretary Clinton spoke with Plaintiffs at Joint Base Andrews. Plaintiffs later made public appearances in which they accused Secretary Clinton and other government officials of lying to them about the cause of the attack during that meeting. Members of the media questioned Secretary Clinton about those accusations; she responded truthfully that she had not lied and expressed sympathy for Plaintiffs' tragic loss. She did not accuse Plaintiffs of lying.

On the basis of Secretary Clinton's public denials of Plaintiffs' accusations, Plaintiffs allege that Secretary Clinton implicitly defamed them, placed them in a false light, and intentionally and negligently inflicted emotional distress.  Each of those claims fails.  Secretary Clinton's statements are in no way defamatory or false and do not place Plaintiffs in a false light, and they are protected by the self-defense privilege.  Plaintiffs, moreover, have failed to allege the essential element of special harm.  And Plaintiffs' infliction of emotional distress claims—which are carbon copies of their defamation claim—fail for the same reasons and otherwise fail to state a claim to relief.

Our Nation's "profound national commitment" to "robust" debate on public issues requires that former government officials be free to participate in that debate without fear of being sued for defamation or related torts by persons with opposing viewpoints.  *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).  Secretary Clinton respectfully requests that this Court dismiss with prejudice the defamation, false light, intentional infliction of emotional distress, and negligent infliction of emotional distress claims in Plaintiffs' complaint.[1]

## BACKGROUND

Plaintiffs Patricia Smith and Charles Woods are each a parent to a victim of the tragic 2012 attack on American facilities in Benghazi, Libya.  *See* Compl. ¶¶ 4–5 (Dkt. #1).  At the time of the Benghazi attack, Defendant Hillary Rodham Clinton served as United States Secretary of State.

---

[1] This motion seeks dismissal of Counts Two and Three and partial dismissal of Counts Five and Six.  In addition, the United States has filed a motion for partial substitution and a motion to dismiss Counts One and Four, as well as the remaining parts of Counts Five and Six, which involve allegations based on Secretary Clinton's use of e-mail during her tenure as Secretary of State.  Dkt. ##23, 24.  Secretary Clinton consents to those motions.  Consistent with this Court's October 21, 2016 Order, Secretary Clinton submits this motion to dismiss with respect to the claims that are not covered by the United States' motion for substitution.  Secretary Clinton reserves her right to move to dismiss the remaining claims in the event that this Court denies the United States' motion for substitution.

2

*Id.* ¶ 8.  Plaintiffs met with Secretary Clinton at Joint Base Andrews shortly after the attack.  *Id.*

¶ 19.  Plaintiffs claim that, during the meeting, Secretary Clinton told them "that the Benghazi

Attack was the result of the anti-Muslim YouTube video that had been posted online," *id.*, even

though, according to Plaintiffs, she supposedly "knew from the very beginning that the Benghazi

Attack was not caused by the YouTube video, but was rather a planned, premeditated terrorist

attack," *id.* ¶ 24.  Since the meeting, Plaintiffs have publicly accused Secretary Clinton of lying to

them about the cause of the attack.  *See* Ex. B (Plaintiff Smith:  "She lied.  She absolutely lied.

Her daughter was able to be told differently that it was not the video, it was something else.  Now

if her daughter could be told, why can't I?"); *id.* (Plaintiff Woods:  "Either she was lying to the

prime minister, or she was lying to me and to the American public."); Ex. D at 12 (Plaintiff Smith:

"Hillary and Obama and Panetta and Biden and all of—and Susan Rice, all told me it was a video,

when they knew it was not the video.").[2]

　　When asked by members of the media about Plaintiffs' accusations that she had lied, Sec-

retary Clinton has denied telling Plaintiffs that the Benghazi attack was caused by a YouTube

---

[2] Exhibit B is a transcript of Secretary Clinton's December 6, 2015 interview with George Steph-
anopoulos, which contains the first statement that Plaintiffs allege to be defamatory.  *See* Compl.
¶ 23(a).  Exhibit D is a transcript of the March 9, 2016 Democratic Party primary debate, which
contains the third statement that Plaintiffs allege to be defamatory.  *See id.* ¶ 23(c).  In deciding
this motion, the Court may consider these transcripts—and all other interviews and statements
cited in the complaint—because they were incorporated by reference in the complaint.  *See, e.g.*,
*Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013) ("[I]n determining whether a complaint
states a claim [for defamation], the court may consider the facts alleged in the complaint, docu-
ments attached thereto or incorporated therein, and matters of which it may take judicial notice.
Judicial notice is properly taken of publicly available historical articles such as were attached to
[the defendant's] motions to dismiss." (citation and internal quotation marks omitted)); *see also,
e.g.*, *Klayman v. Obama*, 125 F. Supp. 3d 67, 74 n.7 (D.D.C. 2015) (considering a news article in
deciding a motion to dismiss because it was cited, and thus incorporated by reference, in the com-
plaint).  It is particularly important to review the entire publication in defamation cases, where
"any single statement or statements must be examined" in context.  *Klayman v. Segal*, 783 A.2d
607, 614 (D.C. 2001).

video.  *See* Compl. ¶ 23.  These denials form the basis of Plaintiffs' claims for defamation and false light and part of their claims for intentional and negligent infliction of emotional distress. There are four statements at issue:

1.      On December 6, 2015, Secretary Clinton was interviewed by George Stephanopoulos on ABC's show "This Week."  *Id.* ¶ 23(a).  Mr. Stephanopoulos played video clips in which Plaintiffs publicly stated that Secretary Clinton had lied during the meeting at Joint Base Andrews. *See* Ex. B.  Mr. Stephanopoulos then asked Secretary Clinton, "Did you tell them it was about the film?  And what's your response?"  Secretary Clinton answered:

> No.  You know, look I understand the continuing grief at the loss that parents ex-perienced with the loss of these four brave Americans.  And I did testify, as you know, for 11 hours.  And I answered all of these questions.  Now, I can't—I can't help it the people think there has to be something else there.  I said very clearly there had been a terrorist group that had taken responsibility on Facebook between the time that I—you know, when I talked to my daughter, that was the latest infor-mation.  We were giving it credibility.  And then we learned the next day it wasn't true.  In fact, they retracted it.  This was a fast moving series of events in the fog of war.  And I think most Americans understand.

Ex. B; Compl. ¶ 23(a).

2.      On December 30, 2015, Secretary Clinton met with *Conway Daily Sun* columnist Tom McLaughlin.  *See* Ex. C (*Conway Daily Sun* article).  Mr. McLaughlin referred to Plaintiffs' accusations and Secretary Clinton's response to Mr. Stephanopoulos and asked, "Somebody is lying.  Who is it?"  Ex. C; Compl. ¶ 23(b).  Without so much as referencing Plaintiffs, Secretary Clinton responded, "Not me, that's all I can tell you."  Compl. ¶ 23(b).  She proceeded to "stress[] she had sympathy for all involved."  Ex. C.

3.      On March 9, 2016, Secretary Clinton was participating in the Democratic Party primary debate when she was asked about Plaintiff Smith's accusation that Secretary Clinton, along with President Obama, Vice President Biden, Secretary of Defense Panetta, and Ambassador Susan Rice, lied about the cause of the attack during the meeting at Joint Base Andrews.  *Id.*

4

¶ 23(c); Ex. D (transcript of debate).  Secretary Clinton responded, "I feel a great deal of sympathy for the families of the four brave Americans that we lost at Benghazi, and I certainly can't even imagine the grief that she has for losing her son, but she's wrong.  She's absolutely wrong." Compl. ¶ 23(c).

4.   On July 31, 2016, Secretary Clinton was interviewed by Chris Wallace on Fox News Sunday.  *See* Ex. E.  Mr. Wallace referred to Plaintiff Smith's public speech at the Republican National Convention and Plaintiffs' accusation that Secretary Clinton told them that the Benghazi attack was caused by a YouTube video.  Ex. E at 6.  He then asked, "Why would they make that up?"  Secretary Clinton responded:

> Chris, my heart goes out to both of them.  Losing a child under any circumstances, especially in this case, two State Department employees, extraordinary men both of them, two CIA contractors gave their lives protecting our country, our values.  I understand the grief and the incredible sense of loss that can motivate that.  As other members of families who lost loved ones have said, that's not what they heard, I don't hold any ill feeling for someone who in that moment may not fully recall everything that was or wasn't said.

Compl. ¶ 23(d).

According to Plaintiffs, these four statements—each of which denied *Plaintiffs'* accusations of lying—amount to a "smear campaign," *id.* at 2, and are defamatory because they "either directly call[] [Plaintiffs] liars, or . . . strongly imply[] that they are liars," *id.* ¶ 23.  Plaintiffs do not allege in any detail how these statements caused them damage, if at all.  They generically claim that they "have suffered pecuniary damage, as well as injury to reputation, impairment to standing in their community, personal humiliation, pain and suffering, and emotional distress."  *Id.* ¶¶ 37, 42.

Plaintiffs' claims for defamation (Count Two) and false light (Count Three) and part of their claims for intentional infliction of emotional distress (Count Five) and negligent infliction of emotional distress (Count Six) are based on these allegations.

5

## STANDARD OF REVIEW

If a complaint lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" it must be dismissed.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[N]aked assertions" or "conclusory statements" will not suffice.  *Id.* (alteration and internal quotation marks omitted).

## ARGUMENT

### I.      Plaintiffs Fail To State a Claim for Defamation.

The speech that Plaintiffs challenge in this case indisputably involves a matter of immense public concern:  the attack on American facilities in Benghazi.  More specifically, it involves a question of considerable debate that remains, to a significant extent, unanswered:  the cause of, and motivations for, the attack.  This is a question that has been posed to Secretary Clinton in many settings both during and after her tenure as Secretary of State.  The First Amendment protects "robust" and "uninhibited" discussion of this difficult and sensitive question, *New York Times*, 376 U.S. at 270, and former government officials such as Secretary Clinton should be free to participate in the public debate without fear of being haled into court by persons holding opposing viewpoints.[3]

Reflecting these considerations, courts in this Circuit and across the country have recognized that vigilant use of summary proceedings such as motions to dismiss are "essential" to ensure

---

[3] Of course, when government officials speak within the scope of their employment, defamation claims based on those statements are barred by the Federal Tort Claims Act.  *See* 28 U.S.C. §§ 2679(d)(1), 2680(h).

that frivolous defamation litigation does not have a chilling effect on free speech. *See Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013) (affirming the grant of a motion to dismiss). This is necessary "because if a suit entails long and expensive litigation, then the protective pur-pose of the First Amendment is thwarted even if the defendant ultimately prevails." *Id.* (internal quotation marks omitted).  For these reasons, "defamation actions should be disposed of at the earliest possible stage of the proceedings if the facts as alleged are insufficient as a matter of law to support a judgment for the plaintiff." *Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992).

Because Secretary Clinton's speech involves a matter of public concern into which Plain-tiffs have publicly thrust themselves, the First Amendment imposes a heightened burden on Plain-tiffs to prove that Secretary Clinton made defamatory statements with actual malice. *See, e.g.*, *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980).  At this stage, how-ever, the Court need not rely on the malice element to dismiss the claim, because Plaintiffs have failed to satisfy the remaining elements of a defamation claim.  To state a claim for defamation, a plaintiff must allege the following elements:

> (1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement amounted to at least negligence; and (4) either the statement was actionable as a matter of law irrespective of special harm, or its publication caused the plaintiff special harm.

*Hourani v. Mirtchev*, 796 F.3d 1, 16 (D.C. Cir. 2015) (internal quotation marks omitted).  Plaintiffs fail to allege four of these basic elements. *First*, they fail to establish that Secretary Clinton made a "defamatory statement concerning" Plaintiffs. *Second*, they do not allege that Secretary Clinton made statements that are provably "false." *Third*, they fail to establish that Secretary Clinton's statements were made without privilege—specifically, the privilege of self-defense. *Fourth*, they fail to allege special harm.

7

### A.      Plaintiffs Do Not Allege That Secretary Clinton's Statements Are Defamatory.

It is fundamental to a defamation claim that the defendant made a statement "concerning" the plaintiff.  *Hourani*, 796 F.3d at 16 (internal quotation marks omitted); *see also Farah*, 736 F.3d at 534; *Coles v. Wash. Free Weekly, Inc.*, 881 F. Supp. 26, 33 (D.D.C. 1995), *aff'd per curiam*, 88 F.3d 1278 (D.C. Cir. 1996).  A plaintiff must further show that the statement is "capable of defamatory meaning."  *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1091 (D.C. Cir. 2007) (internal quotation marks omitted); *see also Farah*, 736 F.3d at 535.  This is no small feat:  the law sets a "high standard" for judging defamatory statements, and to meet it a statement "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous."  *Fleming v. AT&T Info. Servs., Inc.*, 878 F.2d 1472, 1475 (D.C. Cir. 1989) (internal quotation marks omitted).  In deciding whether a statement is reasonably capable of defamatory meaning, the court must consider the publication "as a whole."  *Farah*, 736 F.3d at 535 (internal quotation marks omitted); *accord Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001).

The First Amendment buttresses these common-law standards.  *See Farah*, 736 F.3d at 534.  By requiring that a statement be "of and concerning" the plaintiff and "capable of defamatory meaning," the Constitution imposes "stringent limitations" on a plaintiff's ability to recover on a defamation claim.  *Id.*; *see also New York Times*, 376 U.S. at 288 ("of and concerning" requirement is constitutional).  These limitations are critical to "preserve the breathing space which freedoms of expression require in order to survive."  *Farah*, 736 F.3d at 534 (internal quotation marks omitted).

The burden to show defamatory meaning is even more demanding here, where Plaintiffs rely on a defamation-by-implication theory.  In such cases, it is not enough that "a defamatory inference can reasonably be drawn" from a statement—rather, the statement itself must supply

"additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference." *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990).  Only when the plaintiff makes this "especially rigorous showing" can the communication be deemed capable of bearing the implied defamatory meaning.  *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1339 (D.C. Cir. 2015) (internal quotation marks omitted); *see also White*, 909 F.2d at 519–20.

"These threshold inquiries are questions of law for the court to decide." *Farah*, 736 F.3d at 535; *see also Klayman*, 783 A.2d at 612–13.  Careful consideration of the four statements at issue reveals that they do not contain defamatory statements concerning Plaintiffs:

*Two statements are not "concerning" Plaintiffs.*—Two of Secretary Clinton's statements—the December 6, 2015 statement to Mr. Stephanopoulos and the December 30, 2015 statement to Mr. McLaughlin—are not defamatory because they are not "concerning" Plaintiffs. *Coles*, 881 F. Supp. at 33.  As for the December 6, 2015 statement, Mr. Stephanopoulos asked Secretary Clinton, "Did you tell them it was about the film?"  Compl. ¶ 23(a); Ex. B.  In response, Secretary Clinton focused solely on her own recollection of the meeting, stating, "No."  Compl. ¶ 23(a).  She did not mention Plaintiffs' recollection of the meeting or suggest a reason why their recollection differed from her own, and she certainly did not accuse them of lying.  Secretary Clinton concluded her answer by recognizing Plaintiffs' "continuing grief" and "loss" and then moved on to discuss her testimony before the Benghazi Select Committee and the larger public controversy over the Benghazi attack.  *Id.* ("And I did testify, as you know, for 11 hours.  And I answered all of these questions.  Now, I can't— I can't help it the people think there has to be something else there.").

The same is true for the December 30, 2015 statement.  Mr. McLaughlin asked Secretary Clinton, "Somebody is lying.  Who is it?"  Compl. ¶ 23(b); Ex. C.  Secretary Clinton expressly avoided saying anything about Plaintiffs, responding, "Not me, that's all I can tell you."  Compl.

¶ 23(b). She again expressed sympathy for their loss. *See* Ex. C. Secretary Clinton's statement focused solely on her own recollection of the meeting and did not address Plaintiffs' version of events. Because Secretary Clinton did not say anything in these two statements "concerning" Plaintiffs (aside from sympathetic references to their grief), the statements do not support a claim for defamation. *Coles*, 881 F. Supp. at 33.

 *The other statements do not make Plaintiffs appear "odious, infamous, or ridiculous."*— As for the two statements that actually reference Plaintiffs—the March 9, 2016 statement at the primary debate and the July 31, 2016 statement to Mr. Wallace—they do not meet the "high stand-ard" for judging defamatory statements. *Fleming*, 878 F.2d at 1475. In both statements, Secretary Clinton began by recognizing Plaintiffs' "grief" and "incredible sense of loss," and only then said that Plaintiff Smith was "wrong" about what happened at the meeting at Joint Base Andrews and that Plaintiffs "may not fully recall everything that was or wasn't said" at the meeting. Compl. ¶ 23(c), (d). She did not state that they were lying.

 Neither of these statements is defamatory, as they do not make Plaintiffs "appear odious, infamous, or ridiculous." *Fleming*, 878 F.2d at 1475 (internal quotation marks omitted). In other words, the statements do not invoke "hatred or loathing" for Plaintiffs, do not bring them "disgrace or dishonor," and do not subject them to "scornful laughter." *Klayman*, 783 A. 2d at 618. Instead, the statements at most suggest that Plaintiffs were mistaken. That suggestion does not impute a "moral flaw" to Plaintiffs. Dan B. Dobbs, et al., *The Law of Torts* § 525 (2d ed. 2011).

 *None of the statements implies that Plaintiffs are "liars."*—No doubt recognizing that the actual content of Secretary Clinton's statements is not defamatory, Plaintiffs allege that the state-ments "strongly imply[]" that Plaintiffs are "liars"—invoking the defamation-by-implication doc-trine discussed above. Compl. ¶ 23. But, when considered "in context, a reasonable person of

ordinary intelligence would not understand the fair and natural meaning" of the statements to be that Plaintiffs are "liars." *Klayman*, 783 A. 2d at 618. In the December 30, 2015 interview, Secretary Clinton was asked point blank whether Plaintiffs were lying, but she went out of her way to avoid responding affirmatively and made clear that she could only speak to her own memory of her statements. Compl. ¶ 23(b) ("'Somebody is lying. Who is it?' Clinton responds, "Not me, that's all I can tell you."). In the July 31, 2016 interview, Secretary Clinton explained why she believed that Plaintiffs have a different account of the meeting: not because they were lying but because "in that moment"—shortly after the attack in a meeting fraught with emotion—they "may not fully recall everything that was or wasn't said." Compl. ¶ 23(d). And in all of the statements, Secretary Clinton sympathized with Plaintiffs or said that she does not "hold any ill feeling" for them. *See* Compl. ¶ 23(a), (c), (d); Ex. C. When viewed in context, Secretary Clinton did not imply that Plaintiffs were liars.

But even if Plaintiffs were right (and they are not) that the statements somehow imply that they are liars, to satisfy the defamation-by-implication doctrine, they must also point to something "affirmative" in the statements showing that Secretary Clinton "*intend[ed]* or *endorse[ed]* the defamatory inference." *White*, 909 F.2d at 520. They cannot do so. As just discussed, the context of the statements (the expressions of sympathy, the lack of "ill feeling," the chalking it up to faulty memory) points to the exact opposite—that Secretary Clinton does not believe, and did not endorse the view that, Plaintiffs are liars. Plaintiffs have not alleged that Secretary Clinton made statements concerning them that are capable of defamatory meaning.

### B. Plaintiffs Do Not Allege That Secretary Clinton's Statements Are Provably False.

To be actionable, it is not enough that a statement be capable of defamatory meaning; it must also be false. *Hourani*, 796 F.3d at 16. "A statement on matters of public concern"—such

as those at issue here—"must be provable as false before there can be liability under state defamation law." *Rosen v. Am. Isr. Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012) (internal quotation marks omitted).  That requirement protects the free exchange of opinions on issues of public concern.  Thus, although "a statement of fact may be the basis for a defamation claim, a statement of pure opinion cannot." *Id.* (internal quotation marks omitted).  A statement of opinion is "actionable if—but only if—it has an explicit or implicit factual foundation and is therefore objectively verifiable." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994) (stating that "statements of opinion can be actionable if they imply a provably false fact, or rely upon stated facts that are provably false").  These principles ensure that citizens—including, importantly, former government officials—can express their opinions on matters of public concern without fear that persons with opposing viewpoints will sue for defamation.

Application of these principles demonstrates that Plaintiffs have not alleged the essential element of a false statement.  The crux of Plaintiffs' claim is their allegation that Secretary Clinton "lied" to them about the cause of the Benghazi attack, Compl. ¶ 19, and then subsequently lied again when confronted with their accusations of lying, *id.* ¶ 23.  However, the "cause" of the Benghazi attack is not objectively verifiable.  Many persons, including Secretary Clinton, have expressed opinions on this subject in the years since the attack.  But those opinions are just that— opinions.  The ultimate cause of the attack is unknowable; as Secretary Clinton explained during her testimony before the Benghazi Select Committee, "None of us can speak to the individual motivations of those terrorists who overran our compound and who attacked our CIA Annex. There were probably a number of different motivations."  Ex. F at 312; *see also* Compl. ¶ 23(a) ("This was a fast moving series of events in the fog of war and I think most Americans understand

that.").  Because the cause of the attack is impossible to ascertain, none of the statements that flow

from Secretary Clinton's description of the attack during her meeting with Plaintiffs can be proved

to be false.

### C.     Plaintiffs Do Not Allege That Secretary Clinton's Statements Were Made Without Privilege.

Plaintiffs also fail to allege that Secretary Clinton's statements were made without privi-

lege.  The District of Columbia, like most jurisdictions,[4] "recognizes the common-law qualified

privilege of self-defense as a complete defense to a claim of libel or slander."  *Washburn v. Lavoie*,

437 F.3d 84, 90 (D.C. Cir. 2006); *see also* Restatement (Second) of Torts § 594 cmt. k (1977) ("A

conditional privilege exists under the rule stated in this Section when the person making the pub-

lication reasonably believes that his interest in his own reputation has been unlawfully invaded by

another person and that the defamatory matter that he publishes about the other is reasonably nec-

essary to defend himself.").  The privilege applies "'if the circumstances induce a correct or rea-

sonable belief that (a) there is information that affects a sufficiently important interest of the pub-

lisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful

protection of the interest.'"  *Washburn*, 437 F.3d at 90 (quoting Restatement (Second) of Torts

§ 594).  Although it is "quite difficult" to lose the privilege once established, a defendant can

forfeit it through "excessive publication" or by acting with "express malice."  *Id.* at 91 (internal

quotation marks omitted).

Secretary Clinton's statements easily satisfy this standard.  Before Secretary Clinton made

any of the statements at issue, Plaintiffs publicly accused Secretary Clinton of lying to them about

the cause of the Benghazi attack—an accusation they again repeat in their complaint.  *See* Ex. B;

---

[4] *See Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1559–60 & n.19 (4th Cir. 1994) (collect-ing cases).

Compl. ¶ 19.  She did not initiate any of these exchanges.  Secretary Clinton's interest in protecting herself from this sort of "false and potentially damaging attack on [her] reputation" is sufficiently important to trigger the self-defense privilege.  *Novecon Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556, 566 n.5 (D.C. Cir. 1999).  And there can be no doubt that Secretary Clinton's statements were "of service" to the protection of that interest.  Restatement (Second) of Torts § 594(b).  After all, each statement came after a member of the media directly confronted her with Plaintiffs' accusations, *see* Exs. B–E; each statement therefore "constituted a defense against [Plaintiffs'] attack" on her.  *Washburn*, 437 F.3d at 90.  Secretary Clinton's statements thus were covered by the self-defense privilege, which provides her with a "complete defense" against Plaintiffs' claims. *Id.*

Secretary Clinton has not forfeited the privilege through "excessive publication" or by acting with "express malice."  To show "excessive publication," Plaintiffs must point to a publication that is not "itself covered by the self-defense privilege."  *Id.* at 92.  The complaint is based solely upon four statements, and, as just demonstrated, each of those was privileged.

Any argument that Secretary Clinton acted with "express malice" or "common-law malice" would also fail.  This sort of malice (which is distinct from the concept of "actual malice" in the First Amendment context) "emphasize[s] bad faith and evil motive."  *Moss v. Stockard*, 580 A.2d 1011, 1026 n. 29 (D.C. 1990); *see Mosrie v. Trussell,* 467 A.2d 475, 477 (D.C. 1983).  It requires the defendant to be acting "without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will."  *Moss*, 580 A.2d at 1025; *Mosrie*, 467 A.2d at 477.  And "[u]nless the [defamatory] statement itself is 'so excessive, intemperate, unreasonable, and abusive as to forbid any other reason-

able conclusion than that the defendant was actuated by express malice,'" it cannot support a finding of malice standing alone. *Moss*, 580 A.2d at 1024 (quoting *Ford Motor Credit Co. v. Holland*, 367 A.2d 1311, 1314 (D.C. 1977)); *see Washburn*, 437 F.3d at 91.

The statements at issue do not evince express malice. Far from being "excessive, intemperate, unreasonable, and abusive," *Moss*, 580 A.2d at 1024, Secretary Clinton's statements show compassion and respect for Plaintiffs by highlighting "the continuing grief" and "the incredible sense of loss" they must have been experiencing. Compl. ¶ 23(a), (d); *see also* Compl. ¶ 23(c) ("I certainly can't even imagine the grief that she has for losing her son . . . ."); Ex. C ("Clinton . . . stressed she had sympathy for all involved."). And while none of Secretary Clinton's statements remotely suggests that Plaintiffs are liars, *see supra* pp. 9–11, even if she had made such an assertion, implicitly or explicitly, she would still be entitled to invoke the self-defense privilege. Restatement (Second) of Torts § 594 cmt. k (defendant may call an accuser an "unmitigated liar" in self-defense); Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 2.4.7 (3d ed. 2009) ("[T]he speaker may call the accuser a liar . . . ."). But she did nothing of the sort. Instead, she only said that Plaintiffs "may not fully recall everything that was or wasn't said" and that Plaintiff Smith was "wrong" when she accused Secretary Clinton and other government officials of lying about the cause of the attack. Compl. ¶ 23(c), (d). Neither these statements nor any other allegation in the complaint comes anywhere close to establishing the sort of "bad faith and evil motive" necessary to establish express malice. *Moss*, 580 A.2d at 1026 n.29. Plaintiffs have therefore failed to allege that Secretary Clinton's statements were without privilege.[5]

---

[5] It is appropriate for this Court to address this issue at the motion-to-dismiss stage, where, as here, the existence of the privilege is clear from the face of the complaint. *See Browning v. Clinton*, 292 F.3d 235, 247 (D.C. Cir. 2002) (affirming order granting motion to dismiss on privilege grounds); *see also Burnett v. Sharma*, Nos. 03-2365(RBW), 06-0037(RBW), 2007 WL 1020782, at *10 (D.D.C. Mar. 30, 2007) (same).

### D.      Plaintiffs Do Not Allege Special Harm.

Plaintiffs also fail to allege special harm.  A defamation claim must either be "actionable as a matter of law irrespective of special harm ('*per se*')" or "make[] out a special harm." *Franklin v. Pepco Holdings, Inc. (PHI)*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012).  Plaintiffs' defamation claim does neither.

A statement is defamatory *per se* "if it is so likely to cause degrading injury to the subject's reputation that proof of . . . harm is not required to recover compensation." *Id.*  This generally consists of false statements about criminal conduct, sexual misconduct, carrying a "repugnant disease," or "a matter adversely affecting the person's ability to work in a profession." *Id.*; *see also Von Kahl v. Bureau of Nat'l Affairs, Inc.*, 934 F. Supp. 2d 204, 218 (D.D.C. 2013) (a statement is "defamatory *per se* if it falsely imputes a criminal offense"); *Jackson v. District of Columbia*, 541 F. Supp. 2d 334, 344 (D.D.C. 2008) (same for slander *per se*).  Secretary Clinton's statements make no mention of any issues of criminal conduct, sexual conduct, or health.  Nor do her statements address Plaintiffs' "ability to work in a profession." *Franklin*, 875 F. Supp. 2d at 75.  Indeed, the complaint, like Secretary Clinton's statements, does not even mention Plaintiffs' professions.  At most, the complaint alleges that Secretary Clinton's statements "hurt [Plaintiffs'] reputation." *Id.*; *see* Compl. ¶ 37 ("Plaintiffs have suffered . . . injury to reputation, impairment to standing in their community, personal humiliation, pain and suffering, and emotional distress.").  But generalized allegations about injury to reputation are "insufficient to render [a defendant's statements] defamatory *per se*." *Franklin*, 875 F. Supp. 2d at 75.

Because Secretary Clinton's statements are not actionable *per se*, Plaintiffs must allege that they suffered "special harm." *Id.*; *see also Farnum v. Colbert*, 293 A.2d 279, 282 (D.C. 1972) (only in cases of slander *per se* may the court "overlook any facts relating to damages").  Special harm, or "special damages," is limited to "'actual pecuniary loss, which must be specially pleaded

and proved.'" *Xereas v. Heiss*, 933 F. Supp. 2d 1, 19 (D.D.C. 2013) (quoting *FAA v. Cooper*, 132 S. Ct. 1441, 1451 (2012)).  To properly plead special harm, Plaintiffs "must allege some specific harm and the actual pecuniary loss arising from that harm." *Id.*  Plaintiffs make no effort to meet this standard.  Instead, their complaint contains only the most generic and conclusory allegations of damages.  *See* Compl. ¶ 37 ("As a direct and proximate result of Defendant Clinton's statements, Plaintiffs have suffered pecuniary damage . . . .").  Lacking specificity, Plaintiffs' defamation claim must be dismissed for failure to allege special harm.

## II.    Plaintiffs Fail To State a Claim for False Light.

To plead a claim of false light invasion of privacy, a plaintiff must allege:  "(1) publicity (2) about a false statement, representation, or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Armstrong v. Thompson*, 80 A.3d 177, 188 (D.C. 2013) (internal quotation marks omitted).  A plaintiff "may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion." *Klayman*, 783 A.2d at 619 (internal quotation marks omitted); *accord Armstrong*, 80 A.3d at 188.  When a plaintiff rests a false light claim on the same allegations as a defamation claim, courts analyze the claims "in the same manner." *Armstrong*, 80 A.3d at 188; *see also, e.g.*, *Shipkovitz v. Wash. Post Co.*, 571 F. Supp. 2d 178, 183 (D.D.C. 2008), *aff'd per curiam*, 408 Fed. Appx. 376 (D.C. Cir. 2010).

Plaintiffs' false light claim—which is based on the same allegations as their defamation claim—fails for the reasons discussed above.  *First*, just as Secretary Clinton's statements are not capable of defamatory meaning and are not provably false, they do not "place[] [Plaintiffs] in a false light that would be offensive to a reasonable person." *Armstrong*, 80 A.3d at 188 (internal quotation marks omitted).  *Second*, Secretary Clinton's statements are protected by the self-defense privilege.  "'[T]he same privileges applicable to libel claims may be invoked to defend false light

17

claims.'"  *Washburn*, 437 F.3d at 92 (quoting *White*, 909 F.2d at 518).  Thus, the self-defense

privilege applies to bar false light claims to the same extent it bars defamation claims.  *See id.*

And, *third*, Plaintiffs have failed to allege special harm.

## III.  Plaintiffs Fail To State a Claim for Intentional Infliction of Emotional Distress.

To state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1)

extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly

(3) causes the plaintiff severe emotional distress."  *Armstrong*, 80 A.3d at 189 (internal quotation

marks omitted).  To satisfy the first element of this test, it is insufficient "that the defendant has

acted with an intent which is tortious or even criminal, or that his conduct has been characterized

by malice."  *Id.* (alteration and internal quotation marks omitted).  Rather, the defendant's conduct

must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*

(internal quotation marks omitted); *accord Steele v. Isikoff*, 130 F. Supp. 2d 23, 36 (D.D.C. 2000).

Courts routinely dismiss claims for intentional infliction of emotional distress at the motion-to-

dismiss stage where plaintiffs have not alleged sufficiently outrageous conduct.  *See, e.g.*, *Evans*

*v. District of Columbia*, 391 F. Supp. 2d 160, 170 (D.D.C. 2005); *Steele*, 130 F. Supp. 2d at 36.

Plaintiffs have not alleged the element of extreme and outrageous conduct.  The bulk of

Plaintiffs' claim for intentional infliction of emotional distress is based on their allegations about

Secretary Clinton's use of a private e-mail server, *see* Compl. ¶¶ 50–52; the United States has filed

a motion for substitution as to that part of the claim.  In a throwaway line, Plaintiffs also state

summarily that Secretary Clinton "defame[d] and [held] in a false light Plaintiffs."  Compl. ¶ 51.

To the extent Plaintiffs are basing their claim of intentional infliction of emotional distress on

Secretary Clinton's public statements, those statements do not come anywhere close to the kind of

"outrageous" and "atrocious" conduct that could support a claim for intentional infliction of emotional distress. *Armstrong*, 80 A.3d at 189 (internal quotation marks omitted). As discussed above, Secretary Clinton couched those statements in expressions of *sympathy* for Plaintiffs, and she did not accuse Plaintiffs of lying. The statements, moreover, involved a matter of great public interest and were made in response to news media questions about Plaintiffs' accusations that Secretary Clinton had lied to them. Public discourse on a matter of national concern is not outrageous conduct.

Plaintiffs also have not alleged the element of severe emotional distress. Although Plaintiffs allege in conclusory terms that they suffered "severe emotional distress stemming from the death of Plaintiffs' sons," Compl. ¶ 52, they do not allege any severe emotional distress resulting from Secretary Clinton's public statements—as would be necessary to support an intentional infliction of emotional distress claim based on those statements.

Finally, because Plaintiffs' claim of intentional infliction of emotional distress is expressly based on their allegations of defamation, it fails for the same reasons as that claim. *See Farah*, 736 F.3d at 540 ("Because [the plaintiffs'] defamation claim fails, so do their other tort claims based upon the same allegedly defamatory speech."). A plaintiff should not be permitted to "avoid the strictures of the burdens of proof associated with defamation" by dressing up a defamation claim as intentional infliction of emotional distress. *Klayman*, 783 A.2d at 619 (internal quotation marks omitted).

## IV.    Plaintiffs Fail To State a Claim for Negligent Infliction of Emotional Distress.

Claims for negligent infliction of emotional distress are rare. To recover on such a claim, "a plaintiff must show that (1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable." *Harris v. U.S. Dep't of Veterans Affairs*, 776

F.3d 907, 915 (D.C. Cir. 2015) (internal quotation marks omitted).  "A classic example is that of the reckless driver who speeds by a pedestrian, missing her by only inches."  *Arias v. DynCorp*, 752 F.3d 1011, 1017 (D.C. Cir. 2014).  Plaintiffs do not allege—nor could they credibly allege— that Secretary Clinton's public statements were negligent, that the statements created a zone of physical danger, or that Plaintiffs were in any such zone of physical danger.  Accordingly, this theory of liability is simply inapplicable.  And, in any event, because it is based on their allegations of defamation, it fails for the same reasons as that claim.

## CONCLUSION

For the foregoing reasons, Secretary Clinton respectfully requests that this Court dismiss with prejudice Plaintiffs' claims for defamation, false light, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Respectfully submitted,

/s/ David E. Kendall

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Amy Mason Saharia (D.C. Bar No. 981644)
Stephen L. Wohlgemuth (D.C. Bar No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
dkendall@wc.com
kturner@wc.com
asaharia@wc.com
swohlgemuth@wc.com

*Counsel for Defendant Hillary Rodham Clinton*

November 14, 2016

**CERTIFICATE OF SERVICE**

I, David E. Kendall, counsel for Defendant Hillary Rodham Clinton, certify that, on November 14, 2016, a copy of this Motion To Dismiss was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

/s/ David E. Kendall
David E. Kendall