IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICIA SMITH and CHARLES WOODS<br><br>           Plaintiffs,<br><br>v.<br><br>HILLARY CLINTON,<br><br>Defendant | Civil Action No. 3:16-cv-02010 |

**PLAINTIFFS' OPPOSITION TO THE UNITED STATES' MOTION FOR PARTIAL SUBSTITUTION AND MOTION TO DISMISS**

Plaintiffs Patricia Smith and Charles Woods ("Plaintiffs" unless individually named) hereby submit the following in opposition of the United States' Motion for Partial Substitution and Motion to Dismiss.

**I.     THE LAW**

**A.     Defendant Clinton Was Not Acting in the Scope of Her Employment**

Plaintiffs claims are being brought against Defendant Clinton in her individual capacity, and not in her capacity as former Secretary of State of the United States, which in and of itself renders the United States Motion for Partial Substitution improper.

The United States disingenuously contends that, pursuant to the Westfall Act, Defendant Clinton was acting in within the scope of her employment at the time of the incident out of which the claim arose. In support, the United States sets forth the Certification of the Director of the Torts Branch, Civil Division, United States Department of Justice (James G. Touhey, Jr.). Docket No. 23-1.

However, Mr. Touhey's certification is clearly not dispositive. "[T]he government's certification is not conclusive because it is the Court that makes the final determination as to the scope of employment issue." *Kalil v. Johanns*, 407 F. Supp. 2d 94, 97 (D.D.C. 2005). "State law governs the issue of whether the conduct was within the scope of employment." *Id*. Indeed, the Supreme Court has expressly recognized the conflicts of interest that arise should such certification not be subject to judicial review. *See Gutierrez De Martinez v. Lamagno,* 515 U.S. 417, 436 (U.S. 1995) ("The local United States Attorney, whose conflict of interest is apparent, would be authorized to make final and binding decisions insulating both the United States and federal employees like Lamagno from liability while depriving plaintiffs of potentially meritorious tort claims.") *Id*. The Court in *Gutierrez* therefore held that scope-of employment certifications are subject to judicial review. *Id*. At most, Mr. Touhey's certification amounts to a *prima facie* effect. *Kimbro v. Velten*, 30 F.3d 1501 (D.C. Cir. 1994). If Plaintiffs "allege sufficient facts that, taken as true, establish that the defendants' actions exceeded the scope of their employment," *Kalil*, 407 F. Supp. 2d at 99, Plaintiffs must be afforded the opportunity to take discovery. The certification itself does not have any particular evidentiary weight. *Kimbro v. Velten*, 30 F.3d 1501.

The District of Columbia follows the Restatement's interpretation of "scope of employment." *Kalil*, 407 F. Supp 2d at 97. An employee is acting within the scope of employment only if:

> [a] it is of the kind he is employed to perform; [b] it occurs substantially within the authorized time and space limits; [c] it is actuated, at least in part, by a purpose to serve the master, and [d] if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

*Id.* Here, Defendant Clinton was clearly acting outside the scope of her employment in using a secret private email server. By its very nature, the use of a private email server to send and

receive emails falls outside the scope of her duties as Secretary of State, which would have been carried out using Defendant Clinton's official government email. The State Department's own rules clearly and unequivocally provide that:

> It is the Department's general policy that normal day-to-day operations be conducted on an authorized [Automated Information System], which has the proper level of security control to provide nonrepudiation, authentication and encryption, to ensure confidentiality, integrity, and availability of the resident information.[1]

It is absurd to contend that Defendant Clinton's violating the State Department's rules was done within the scope of her employment at the State Department. The entire point of any organization establishing internal rules and procedures is for their employees to follow them—attempts to skirt such rules cannot possibly be said to be done in course of employment. In fact, the failure to use an authorized AIS was not the only rule that Defendant Clinton willfully chose to ignore. Defendant Clinton also retained agency records after departing office, which runs afoul of 36 C.F.R. § 1222.24, which states "Departing officials and employees [may] not remove Federal records from agency custody."[2] "[Defendant Clinton] didn't just retain records after leaving the State Department; those records were never in the department's possession in the first place."[3] Additionally, Defendant Clinton's conduct violated another State Department rule mandating preservation of federal records from loss or destruction.

> "All Department employees are … required by law to preserve documentary materials meeting the definition of a record under the Federal Records Act [and are] responsible for creating, using, maintaining, preserving, and disposing of the Department's information and records."[4]

---

[1] Josh Gerstein, *Clinton Private Email Violated "Clear-Cut" State Dept. Rules*, Politico, March 5, 2015, available at: http://www.politico.com/story/2015/03/state-department-email-rule-hillary-clinton-115804
[2] Lachlan Markay, *Five State Department Rules That Hillary's Email Practices Violated*, FreeBeacon, May 26, 2016, available at: http://freebeacon.com/issues/five-state-department-rules-hillary-email-violated/
[3] *Id*.
[4] *Id*.

"Clinton has said that she deleted roughly 30,000 emails stored on her server that she deemed of a personal and non-official nature. Neither the State Department nor the records agency has ever seen those emails. We now know that they included messages that were official in nature."[5] Defendant Clinton's blatant disregard for her own former employer's rules and procedures cannot possibly be held to be done within the scope of her employment at the State Department. Such a holding would, quite simply, contravene all logic.

Even more, using a private email server to send and receive classified information, including information that directly led to the Benghazi attack--Complaint ¶¶ 9, 15—is not the kind Defendant Clinton was employed to perform. Indeed, the extensive investigation into Defendant Clinton's wrongdoing by the Federal Bureau of Investigation is dispositive evidence thereof. Lastly, Defendant Clinton's use of a private email server in no way whatsoever was possibly done for the purpose of serving her employer. Clearly, the government of the United States stands to benefit in no way from the transmission of top-secret, confidential, and classified information via an unsecured private email server. Defendant Clinton's use of a private email server was done to serve her own, personal interests, including attempting to stonewall valid FOIA requests into Defendant Clinton's various dealings[6] and to secretly do business for Defendant Clinton's private foundation, the Clinton Foundation.

Furthermore, courts have held that criminal conduct generally falls outside the scope of employment. "In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered: . . . whether or not the act is

---

[5] *Id.*

[6] Tim Cushing, *Emails Show Hillary Clinton's Email Server Was a Massive Security Headache, Set up to Route Around FOIA Requests*, TechDirt, June 24, 2016, available at:
https://www.techdirt.com/articles/20160623/09170034795/emails-show-hillary-clintons-email-server-was-massive-security-headache-set-up-to-route-around-foia-requests.shtml

seriously criminal." *Rasul*, 512 F.3d at 659 (internal quotations omitted). "If conduct *is* seriously criminal, the Restatement explains that it is generally less likely that the conduct comes within the scope of employment." *Id*. at 660. Here, leading experts in the field, such as former U.S. Attorney General Michael Mukasey, have publically stated that criminal charges were justified for Defendant Clinton's wrongful acts.[7] Former Associate Attorney General Rudy Giuliani spoke of "16 crimes he believes the evidence suggests [Defendant Clinton] is already guilty of," including:

    (1) 18 U.S.C. § 201 – Bribery

    (2) 18 U.S.C. § 208 – Acts Affecting a Personal Financial Interest

    (3) 18 U.S.C. § 371 – Conspiracy

    (4) 18 U.S.C. § 1001 – False Statements

    (5) 18 U.S.C. § 1341 -  Frauds and Swindles

    (6) 18 U.S.C. § 1343 – Fraud by Wire

    (7) 18 U.S.C. § 1349 – Attempt and Conspiracy (To Commit Fraud)

    (8) 18 U.S.C. § 1505 – Obstruction of Justice

    (9) 18 U.S.C. § 1519 – Destruction (Alteration or Falsification) of Records in Federal Investigations or/and Bankruptcy

    (10)    18 U.S.C. § 1621 – Perjury

    (11)    18 U.S.C. § 1905 – Disclosure of Confidential Information

    (12)    18 U.S.C. § 1924 – Unauthorized Removal and Retention of Classified Documents or Material

---

[7] Michael Mukasey, *Clinton's Emails: A Criminal Charge is Justified*, Wall Street Journal, Jan. 21, 2016, available at http://www.wsj.com/articles/clintons-emails-a-criminal-charge-is-justified-1453419158

(13) 18 U.S.C. § 2071 – Concealment (Removal or Mutilation) of Government Records

(14) 18 U.S.C. § 7201 – Attempt to Evade or Defendant a Tax (Use of Clinton Foundation Funds for Personal or Political Purposes)

(15) 18 U.S.C. § 7212 – Attempts to Interfere with Administration of Internal Revenue Laws[8]

Importantly, James Comey, current Director of the Federal Bureau of Investigation, publically stated that Defendant Clinton was "extremely careless in their handling of very sensitive, highly classified information."[9] It therefore is evident that Defendant Clinton acted in a criminal fashion, and that the the reason that she has not been charged to date is purely political. In fact, Andrew Napolitano publically stated, "It is well known that the FBI agents on the ground, the human beings who did the investigative work, had built an extremely strong case against Hillary Clinton and were furious when the case did not move forward….[t]hey believe the decision not to prosecute came from The White House."[10] This however, does not change the fact that her actions were criminal, and therefore clearly outside the scope of her employment.

As such, Defendant Clinton clearly was not acting within the scope of her employment as Secretary of State when sending and receiving top-secret, confidential, and classified emails using her personal, private email server. At a minimum, Plaintiffs have pled more than adequate facts to entitle Plaintiffs to conduct discovery and uncover additional evidence to demonstrate

---

[8] *Rudy Giuliani Believes Hillary Is Guilty of These 16 Crimes*, TruthFeed, October 29, 2016, available at: http://truthfeed.com/rudy-giuliani-believes-hillary-is-guilty-of-these-16-crimes/32605/
[9] *Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System*, FBI, July 5, 2016, available at: https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system
[10] Matt Zimmerman, Adam Housley, *FBI, DOJ roiled by Comey, Lynch decision to let Clinton slide by on emails, says insider*, Fox News, October 13, 2016, available at: http://www.foxnews.com/politics/2016/10/13/fbi-doj-roiled-by-comey-lynch-decision-to-let-clinton-slide-by-on-emails-says-insider.html

that Defendant Clinton was only acting to serve her own, self-preservation interests when she decided to transmit matters of national security using her personal, private email server.

### B. The United States' Motion to Dismiss Should Be Denied

As set forth in *supra* section (A), the United States' Motion for Partial Substitution should be denied, thereby rendering the United States' Motion to Dismiss moot. However, in the event that this Court grants the United States' Motion for Partial Substitution, the United States' Motion to Dismiss should be denied for the reasons set forth below.

#### a. Plaintiffs Need Not Exhaust Administrative Remedies Because Doing So Would Be Futile

Under the false presumption that the United States is properly substituted into the matter, the United States contends that Plaintiffs' claims should be dismissed because Plaintiffs failed to exhaust administrative remedies pursuant to the Federal Tort Claims Act, specifically "first present[ing] the claim to the appropriate Federal agency…." *Rasul v. Myers*, 512 F. 3d 644, 611 (D.C. Cir. 2008). Plaintiffs here did not make a claim to a Federal agency prior to initiating this Complaint because Plaintiffs contend that Defendant Clinton was clearly acting outside the scope of her employment as Secretary of State, and therefore Plaintiffs are not subject to the Federal Tort Claims Act. However, even if the United States were properly substituted, Plaintiffs failure to exhaust administrative remedies should not warrant dismissal because doing so would be futile.

"To be sure, an 'exception to the exhaustion requirement … is where any resort to [administrative remedies] would have been futile.' *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 49 (D.D.C. 2005) (internal citations omitted). "The D.C. Circuit explains that the resort to administrative remedies is 'futile,' for the purposes of this exception, where there is 'certainty of an adverse decision; from the administrative agency." *Id*. (internal citations omitted). Here, any

7

attempt to secure an outcome favorable to Plaintiffs through administrative relief would be futile. Indeed, Defendant Clinton still enjoys considerable protection within the federal government, as evidenced by the United States' attempt here to substitute in, even though the tortious conduct pled clearly falls outside the scope of Defendant Clinton's employment. Forcing Plaintiffs to go through administrative channels would only serve to prejudice Plaintiffs by needlessly delaying their right and ability to recover for Defendant Clinton's tortious conduct.

### b. The United States Was Properly Served

Any contention that the United States was not properly served has been mooted out by virtue of the fact that the United States did, in fact, receive notice of the Complaint and has submitted documents and memorandums in opposition thereto. The United States relies upon the advisory committee's note to the 1993 amendment of the Federal Rules of Civil Procedure, which states that the service must be "specifically addressed to the civil process clerk." Plaintiff's failure to do so is clearly a harmless error, as Plaintiffs' Complaint indeed <u>did</u> receive proper handling, as evidenced by the United States' response. The United States improperly relies upon *Rushing v. Leavitt*, 2005 U.S. Dist. LEXIS 3979 (D.D.C. Mar. 7, 2005) to contend that Plaintiffs' claims should be dismissed as a result of the allegedly improper service. However, as the *Rushing* court held, and the United States conveniently omits, such service is only "partially defective." *Id*. at 40. "[I]f this were the only problem with Plaintiff's suit, the Court would allow Plaintiff additional time to perfect service." *Id*. at 40-41. As such, even though the United States has clearly suffered no prejudice as a result of the allegedly defective service, Plaintiffs respectfully request that, should this Court find that Plaintiffs' service was

indeed defective, this Court allow Plaintiffs time to cure the defect, per *Rushing*, instead of dismissing Plaintiffs' Complaint.[11]

## II.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the United States' Motion for Partial Substitution and Motion to Dismiss be summarily denied. However, should this Court decide not to deny the United States' motions as required by law, Plaintiffs must be allowed to conduct discovery on the scope of Defendant's Clinton's employment, as discussed previously, before this Court considers dismissal of Plaintiffs' claims. That the Defendant is Hillary Clinton does not shield her from the law, as there must be no dual system of justice. Discovery thus at a minimum, through an oral deposition where Defendant Clinton can be questioned under oath (with responses not made her attorneys) must proceed if this Court, which has the appearance of a  conflict of interest, is to even consider dismissal.

Dated: November 17, 2016

Respectfully submitted,
*/s/ Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
Freedom Watch, Inc.
2020 Pennsylvania Avenue N.W.
Suite 345
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com

---

[11] Similarly, any assertion that Defendant Clinton may bring that she was not properly served is entirely moot by virtue of this Court's minute order, entered October 19, 2016, stating that "[w]hether or not the defendant was served with process in accordance with applicable state law, defendant is now on notice of this lawsuit, and counsel entered an appearance on her behalf on September 15, 2016."

## **CERTIFICATE OF SERVICE**

      I, Larry Klayman, counsel for Plaintiffs hereby certify that on this day, November 17, 2016, a copy of the foregoing was filed via this Court's ECF system and served upon all parties and/or counsel of record.

                                                                */s/ Larry Klayman*
                                                                Larry Klayman