**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PATRICIA SMITH and CHARLES WOODS

Plaintiffs,

v.

HILLARY RODHAM CLINTON

Defendants.

Civil Action No. 1:16-01606 (ABJ)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HILLARY CLINTON'S MOTION TO DISMISS

Larry Klayman, Esq.
The Klayman Law Group
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

*Attorney for Plaintiffs*

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

LEGAL STANDARD.................................................................................................................4

THE LAW AND ARGUMENT ..................................................................................................5

   Plaintiffs Stated a Valid Claim for Defamation ........................................................................5

      Plaintiffs Properly Alleged that Defendant Clinton Made Defamatory Statements
      Concerning Plaintiffs ........................................................................................................6

      Plaintiffs Properly Alleged that Defendant Clinton's Statements Were Provably False.....8

      The Self Defense Privilege is Not Applicable ...............................................................11

      Plaintiffs Have Properly Alleged Damages ...................................................................13

   Plaintiffs' Properly Pled False Light Claim..............................................................................14

   Plaintiffs Properly Pled Intentional Infliction of Emotional Distress Claim ............................14

CONCLUSION.........................................................................................................................16

PROOF OF SERVICE..............................................................................................................18

# TABLE OF AUTHORITIES

*Cases*

Abraham v. Baldwin, 42 So. 591 (U.S. 2009) ...................................................................5

Armstrong v. Thompson, 80 A.3d 177 (D.C. 2013) ......................................................14

Ashcroft v. Iqbal, 556 U.S. 662, 678 (Fla. 1906) ...........................................................4

Devincci Salah Hourani v. Mirtchev, 796 F. 3d 1 (D.C. Cir. 2015)...............................5

Dimick v. Schiedt, 293 U.S. 474 (U.S. 1935) .............................................................4, 5

Farah v. Esquire Magazine, 736 F.3d 528 (D.C. Cir. 2013) ..........................................6

Franklin v. Pepco Holdings, Inc., 875 F. Supp. 2d. 66 (D.D.C. 2012) ........................13

Glynn v. City of Kissimmee, 393 So. 2d 774 (Fla. 5th DCA 1980) .............................5

Gordon v. United States Capitol Police, 778 F.3d 158 D.C. Cir. 2015).........................4

Kalil v. Johanns, 407 F. Supp. 2d 94 (D.D.C. 2005) .....................................................3

Moldea v. New York Times Co., 15 F.3d 1137 (D.C. Cir. 1994) ...................................8

Moss v. Stockard, 580 A.2d 1011 (D.C. 1990).............................................................12

Novecon Ltd. V. Bulgarian-American Enter. Fund, 190 F.3d 556 (D.C. Cir. 1999) ...................12

Rosen v. Am. Isr. Pub. Affairs Comm., Inc., 41 A.3d 1250 (D.C. Cir. 2012) .............10

Shaw v. R.J. Reynolds Tobacco Co., 818 F. Supp. 1539 (M.D. Fla. 1993) ...................5

Washburn v. Lavoie, 437 F.3d 84 (D.C. Cir. 2006) .....................................................11

Weyrich v. New Republic, Inc., 235 F.3d 617 (D.C. Cir. 2001) ....................................4

Xereas v. Heiss, 933 F. Supp. 2d 1(D.D.C. 2013) .......................................................13


*Statutes*

Fed. R. Civ. P. 8(a)(2) ....................................................................................................4

Fed. R. Civ. P. 12(b)(6) ..............................................................................4, 5, 10, 12, 16

<u>**MEMORANDUM OF LAW**</u>

Plaintiffs Patricia Smith and Charles Woods ("Plaintiffs" unless individually named) hereby submit the following in opposition to Defendant Hillary Clinton's ("Defendant Clinton") Motion to Dismiss, filed November 14, 2016. ("Def's Mtn.").

## I.   <u>INTRODUCTION</u>

 Plaintiffs are the parents of Sean Smith and Tyrone Woods, both of whom tragically were killed on September 11, 2012 at the U.S. Consulate in Benghazi, Libya ("Benghazi attack") by radical terrorists. Defendant Clinton, who was at the time in office as Secretary of State, acted far outside the scope of her employment and utilized a private email server to send and receive top secret, confidential information, including the "location of Ambassador Christopher Stevens, and thus the U.S Department of State and the covert Central Intelligence Agency and other government operations in Benghazi, Libya." Comp. ¶ 15. These transmissions were hacked, by virtue of their unsecured nature, by foreign powers and terrorist designated states and directly led to the Benghazi attack. Comp. ¶ 16.

After the Benghazi attack, Defendant Clinton met with Plaintiffs at Joint Base Andrews and told Plaintiffs that the Benghazi attack was a result of an internet video criticizing the prophet Muhammad. Comp. ¶¶ 19-20; *See also* Plaintiffs' Affidavits ("**Exhibit A**"); Diary entry of Charles Woods taken contemporaneously with meeting with Defendant Clinton ("**Exhibit B**"). Defendant Clinton told this to Plaintiffs, despite fully knowing at the time that her statement was false:

> In fact, Defendant Clinton knew from the very beginning that the Benghazi Attack was not caused by the YouTube video, but was rather a planned, premeditated terrorist attack. On the night of the Benghazi Attack, Defendant Clinton sent an e-mail to her daughter, Chelsea Clinton, where she clearly blames the attack on an "Al-Qaeda-like group". In another email the day after the Benghazi Attack, Defendant Clinton directly told the Egyptian Prime Minister

'we know the attack in Libya had nothing to do with the film. It was a planned attack, not a protest.'

Comp. ¶ 24. However, during Defendant Clinton's subsequent campaign for president, Defendant Clinton "negligently, recklessly, and/or maliciously defamed Plaintiffs by either directly calling them liars, or by strongly implying that they are liars, in order to protect and enhance her public image and intimidate and emotionally harm and silence them to not speak up about the Benghazi attack on at least four separate occasions." Comp. ¶ 23. The Complaint sets forth four instances of Defendant Clinton's defamatory allegations, but also pleads that this list is not exhaustive, thereby necessitating discovery:

(a) **December 6, 2015** – *Interview with ABC's George Stephanopoulos* – Defendant Clinton flat out falsely denied telling the families of Benghazi victims that the YouTube video caused the attack. After George Stephanopoulos asked Defendant Clinton, "Did you tell them it was about the film?", Defendant Clinton responded, "No. You know, look I understand the continuing grief at the loss that parents experienced with the loss of these four brave Americans. And I did testify, as you know, for 11 hours. And I answered all of these questions. Now, I can't -- I can't help it the people think there has to be something else there. I said very clearly there had been a terrorist group, uh, that had taken responsibility on Facebook, um, between the time that, uh, I – you know, when I talked to my daughter, that was the latest information; we were, uh, giving it credibility. And then we learned the next day it wasn't true. In fact, they retracted it. This was a fast-moving series of events in the fog of war and I think most Americans understand that."

(b) **December 30, 2015** – *Conway Daily Sun Editorial Board Meeting* – Defendant Clinton directly branded Plaintiffs as liars. After Conway Daily Sun columnist Tom McLaughlin pointed out discrepancies in Defendant Clinton's private and public comments about the cause of the Benghazi Attack, and referenced Defendant Clinton's interview with George Stephanopoulos where Defendant Clinton denies telling Plaintiffs that the Benghazi Attacks were caused by the YouTube video, McLaughlin asks, "Somebody is lying. Who is it?". Clinton responds, "Not me, that's all I can tell you."

(c) **March 9, 2016** – *Democratic Presidential Debate* – When asked about Plaintiff Smith's allegation that Defendant Clinton lied to her by blaming the Benghazi Attack on the YouTube video, Defendant Clinton responded by saying, "I feel a great deal of sympathy for the families of the four brave Americans that we lost at Benghazi, and I certainly can't even imagine the grief that she has for losing her son, but she's wrong. She's absolutely wrong."

2

(d) **July 31, 2016** – *Interview with Chris Wallace of Fox News Sunday* – Defendant Clinton stated, "Chris, my heart goes out to both of them. Losing a child under any circumstances, especially in this case, two State Department employees, extraordinary men both of them, two CIA contractors gave their lives protecting our country, our values. I understand the grief and the incredible sense of loss that can motivate that. As other members of families who lost loved ones have said, that's not what they heard, I don't hold any ill feeling for someone who in that moment may not fully recall everything that was or wasn't said."

Comp. ¶ 23.

Defendant Clinton, in her motion, operates under the false presumption that she was acting within the scope of her employment when she used a private email server to transmit and receive classified and confidential information, and thereby fatally jeopardizing the safety of Plaintiffs' sons. Plaintiffs vehemently deny this contention, and have briefed this issue at length.[1] As such, Defendant Clinton only responds to Plaintiffs' claims for defamation, false light, intentional infliction of emotional distress, and negligent infliction of emotional distress. Since this instant motion only pertains to actions taken by Defendant Clinton after her tenure as Secretary of State, any argument regarding immunity is entirely inapplicable. To the extent that Defendant Clinton has reserved the right to move to dismiss Plaintiffs' remaining claims should the United States not be permitted to be substituted, because Defendant Clinton was not acting within the scope of her employment, Plaintiffs reserve the right to respond to those arguments at that time.[2]

///

---

[1] It bears repeating, however, that Defendant Clinton's certification is not dispositive, and Plaintiffs must be allowed to conduct discovery to show and confirm, given Defendant Clinton's challenge, that Clinton was acting outside the scope of her employment. If Plaintiffs "allege sufficient facts that, taken as true, establish that the defendants' actions exceeded the scope of their employment," at a minimum, Plaintiffs must be afforded the opportunity to take discovery. *Kalil v. Johanns,* 407 F. Supp. 2d 94, 99 (D.D.C. 2005).

[2] At this time, Plaintiffs withdraw, without prejudice, their claim for Negligent Infliction of Emotional Distress only. Plaintiffs do not dismiss any other claims.

## II.  **LEGAL STANDARD**

Fed. R. Civ. P. 8(a)(2) states that a pleading need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." When reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must "accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party." *Gordon v. United States Capitol Police*, 778 F.3d 158, 163-164 (D.C. Cir. 2015).

A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotations omitted). As such, a motion to dismiss at this stage must be decided solely on what Plaintiffs have plead in their complaint, taken as true, and not upon any factual "contradictions" that Defendants have attempted to insert. Involving such weighing of fact would take the standards of pleading to new heights not contemplated before by any Court.

When deciding on a motion to dismiss a claim for defamation, the Court "must assume, as the complaint alleges, the falsity of any express or implied factual statements made in the article." *Weyrich v. New Republic, Inc.,* 235 F.3d 617, 623 (D.C. Cir. 2001). It must also assume that the defamatory statements were made "with knowledge of their falsity or reckless disregard for their truth." *Id*. In situations where resolution is necessarily fact intensive, like defamation, the U.S. Supreme Court has held that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (U.S. 1935). As such, it is imperative that Plaintiffs be afforded the

opportunity to conduct discovery and present its findings to the proper fact-finding body—the jury. In fact, courts have held that even in a summary judgment motion for defamation, taking the matter out of the jury's hands is almost always inappropriate, except in those rare cases where the circumstances surrounding the allegedly defamatory communication are completely undisputed. *See, e.g.*, *Shaw v. R.J. Reynolds Tobacco C*o., 818 F. Supp. 1539, 1541 (M.D. Fla. 1993), aff'd, 15 F.3d 1097 (11th Cir. 1994); *Abraham v. Baldwin*, 42 So. 591, 592 (Fla. 1906); *Glynn v. City of Kissimmee*, 393 So. 2d 774. 776 (Fla. 5th DCA 1980). This principle applies even stronger here, where Defendant Clinton has not yet entered any evidence on her behalf and where a simple Rule 12(b)(6) motion is at bar. Plaintiffs must, at a minimum, be permitted to conduct discovery.

## III.   **THE LAW AND ARGUMENT**

### a.   **Plaintiffs Stated a Valid Claim for Defamation**

Under District of Columbia law, a valid defamation claim must plead only four elements:

> [T]he defendant made a false and defamatory statement concerning the plaintiff";
> (2) the defendant published the statement without privilege to a third party; (3) the
> defendant's fault in publishing the statement amounted to at least negligence; and
> (4) either the statement was actionable as a matter of law irrespective of special
> harm, or its publication caused the plaintiff special harm.

*Devincci Salah Hourani v. Mirtchev*, 796 F.3d 1, 16 (D.C. Cir. 2015) (internal quotations omitted). Defendant Clinton contends incorrectly that Plaintiffs (1) failed to establish that Defendant Clinton made a defamatory statement concerning Plaintiffs; (2) failed to allege that Defendant Clinton made statements that are provably false; (3) failed to establish that Defendant Clinton's statement were made without privilege, and (4) failed to allege special harm. Def's Mtn. at 9. Each of these contentions are without merit, and must be denied, as discussed below.

///

### i.      Plaintiffs Properly Alleged that Defendant Clinton made Defamatory Statements Concerning Plaintiffs

Defendant Clinton incorrectly contends that (1) two of the statements are not concerning Plaintiffs, (2) the other statements do not make Plaintiffs appear odious, infamous, or ridiculous, and (3) none of the statements imply that Plaintiffs are liars. These contentions are wrong.

Defendant Clinton claims that the December 6, 2015 statement to Mr. Stephanopoulos and the December 30, 2015 statement to Mr. McLaughlin are not defamatory because they are not concerning Plaintiffs. In support, Defendant Clinton essentially argues that because her defamatory statement did not expressly mention Plaintiffs by name, that they do not concern Plaintiffs. However, as Defendant Clinton admits, defamatory statement must be "taken as a whole." *Farah v. Esquire Magazine*, 736 F.3d 528, 535 (D.C. Cir. 2013). Indeed, to the contrary, upon review of the entire publication, there is absolutely no doubt that Defendant Clinton's defamatory statements concerned Plaintiffs Patricia Smith and Charles Woods.

On December 6, 2015, in response to Mr. Stephanopoulos' question, "Did you tell them it was about the film?", Defendant Clinton responded:

> **No**. You know, look I understand the continuing grief at the loss that parents experienced with the loss of these four brave Americans. And I did testify, as you know, for 11 hours. And I answered all of these questions. Now, I can't -- I can't help it the people think there has to be something else there. I said very clearly there had been a terrorist group, uh, that had taken responsibility on Facebook, um, between the time that, uh, I – you know, when I talked to my daughter, that was the latest information; we were, uh, giving it credibility. And then we learned the next day it wasn't true. In fact, they retracted it. This was a fast-moving series of events in the fog of war and I think most Americans understand that.

Complaint ¶ 23(a). (emphasis added). Defendant Clinton disingenuously argues that "[s]he did not mention Plaintiffs' recollection of the meeting or suggest a reason why their recollection differed from her own, and she certainly did not accuse them of lying." Def's Mtn. at 11. Based on the published conversation, it is evident that the statement concerned Plaintiffs. In fact,

Defendant Clinton explicitly talks about the "parents…of these four brave Americans." Defendant Clinton clearly references Plaintiffs. Furthermore, Defendant Clinton's assertion that she "did not mention Plaintiffs' recollection of the meeting or suggest a reason why their recollection differed from her own" is, quite simply, irrelevant and meant to confuse the Court. At issue is Defendant Clinton's unequivocal false denial that she had told Plaintiffs that the Benghazi Attacks were caused by an internet video criticizing the prophet Muhammad, and Plaintiffs' subsequent statements to that effect.  Whether she discussed Plaintiffs' recollection or suggested a reason for the difference is of no consequence. Defendant Clinton did not expressly use the word "liar," but her defamatory statement would lead the viewer to draw one conclusion—that she was accusing Plaintiffs of lying. Indeed, Plaintiffs had made public statements detailing what Defendant Clinton had told them about the cause of the Benghazi attack at Joint Base Andrews. Now, by directly contradicting and denying that she had made those statements, regardless of the specific verbiage used, could only possibly lead to one conclusion—that she was accusing Plaintiffs of lying to discredit them. This renders Defendant Clinton's argument that her statements do not imply that Plaintiffs are liars blatantly false, and makes it clear that Defendant Clinton both intended and endorsed the defamatory inference. It is critical to apply the context in which Defendant Clinton's defamatory statements were made—a presidential campaign. Obviously, Defendant Clinton was politically shrewd enough to realize that she could not simply come out and directly use the word "liar" to describe the parents who lost their beloved sons and American heroes in the Benghazi attack, which she had a part in as Secretary of State. However, Defendant Clinton still needed to discredit Plaintiffs in order to avoid yet another controversy and salvage her presidential aspirations. Thus, the fact that Defendant Clinton couches her defamatory statements in expressions of sympathy, as Defendant

Clinton repeatedly and politically points out, does absolutely nothing to change the bottom line—which is that her statements unequivocally portray Plaintiffs as liars. Clearly, one can at least appear to be politically sympathetic, while still calling someone a liar. The two are clearly not mutually exclusive.

The same arguments apply for Defendant Clinton's December 30, 2015 statement, where Defendant Clinton is asked, "Somebody is lying. Who is it?" Comp. ¶ 23(b). Defendant Clinton's response—"Not me, that's all I can tell you"—again only leaves the viewer with one possible conclusion: that Plaintiffs are liars. Again, whether Defendant Clinton attempted to politically couch her statements in expressions of sympathy is, quite frankly, irrelevant, since the defamatory accusations of lying are nonetheless published.

Lastly, Defendant Clinton apparently also weakly suggests that her allegations that Plaintiffs are liars are not defamatory because they do not "make Plaintiffs appear odious, infamous, or ridiculous." Def's Mtn. at 12. (internal quotations omitted). However, as the U.S. Court of Appeals for the District of Columbia Circuit has held, "The bald statement '[Plaintiff] is a liar,' for example, would plainly fall within the class of factual defamatory statements." *Moldea v. New York Times Co.*, 15 F.3d 1137, 1144 (D.C. Cir. 1994) (rev'd on other grounds en banc). Thus, Defendant Clinton's public accusations, calling and/or strongly implying that Plaintiffs are liars, are clearly actionable defamatory statements

### ii. Plaintiffs Properly Alleged that Defendant Clinton's Statements Were Provably False

Defendant Clinton falsely asserts that Plaintiffs' defamation claims fail because they are not "provably false." *See* Def's Mtn. at 13-15. In doing so, Defendant Clinton both misconstrues the facts and incorrectly applies the cited case law. First, Defendant Clinton intentionally misconstrues the facts at issue by claiming that "[b]ecause the cause of the attack is impossible to

ascertain, none of the statements that flow from Secretary Clinton's description of the attack during her meeting with Plaintiffs can be proved to be false." *Id.* at 15. In support of her contention that the "ultimate cause of the attack is unknowable," Defendant Clinton actually and incredibly cites <u>her own</u> testimony before the Benghazi Select Committee. *Id.* at 14. Clearly, this is not a credible source, rife with conflict of interest, as Defendant Clinton was in full cover-up mode to save her presidential aspirations. Indeed, as pled in the Complaint, Defendant Clinton <u>did</u> know, almost immediately, that the Benghazi attack was cased by an "Al-Qaeda-like group."

> In fact, Defendant Clinton knew from the very beginning that the Benghazi Attack was not caused by the YouTube video, but was rather a planned, premeditated terrorist attack. On the night of the Benghazi Attack, Defendant Clinton sent an e-mail to her daughter, Chelsea Clinton, where she clearly blames the attack on an "Al-Qaeda-like group". In another email the day after the Benghazi Attack, Defendant Clinton directly told the Egyptian Prime Minister "we know the attack in Libya had nothing to do with the film. It was a planned attack, not a protest."

Comp. ¶ 24 (internal citations omitted). Even more, assuming that Defendant Clinton is correct that the cause of the Benghazi attack is "unknowable"—which it is not—Defendant Clinton cannot escape Plaintiffs' claim for defamation. In fact, discussion as to the "cause" of the Benghazi attack, as it pertains to Plaintiffs' defamation claim, is nothing more than a red herring meant to confuse the Court since Plaintiffs' defamation claim centers around what Defendant Clinton told Plaintiffs about the cause of the Benghazi attack, and Defendant Clinton's subsequent attempts to portray Plaintiffs as liars when what Defendant Clinton said to Plaintiffs was made public. Thus, legally speaking, the <u>actual</u> cause of the Benghazi attack is irrelevant— although Defendant Clinton's assertion that the actual cause is "unknowable" is blatantly false and contradicted by her own emails. Defendant Clinton's statements regarding whether she told Plaintiffs that the Benghazi attack was a reaction to an internet video criticizing the prophet Muhammad posted on the internet are, indeed, provably false. **Exhibit A**.

Additionally, Defendant Clinton intentionally misinterprets the legal application of "provably false" as it relates to defamation. In *Rosen v. Am. Isr. Pub. Affairs Comm., Inc.*, 41 A.3d 1250 (D.C. Cir. 2012), the U.S. Court of Appeals for the District of Columbia Circuit affirmed the lower court's holding that the defendant's allegedly defamatory statements were not "provably false" because they were "too subjective, too amorphous, too susceptible of multiple interpretations…to make any of them susceptible to proof of particular, articulable content." *Id*. at 1260. *Rosen* dealt with a former employer publishing to the New York Times that a former employee's—the plaintiff— "actions differed from 'the conduct that [defendant] expects from its employees.'" *Id*. at 1252. However, there were no written standards set forth by defendant, and the court correctly held that "standards" was a "general term capable of multiple meanings…that communicates no specific message about a discernable fact to an uninformed hearer." *Id*. at 1258.

*Rosen* is entirely different from the facts at issue. Here, there are no ambiguous terms that are "capable of multiple meanings." Indeed, the facts here are incredibly straightforward. Plaintiffs have alleged that Defendant Clinton told them that the Benghazi attacks were caused by a response to internet video criticizing the prophet Muhammad on the internet, and Defendant Clinton subsequently tried to discredit Plaintiffs and call them liars, claiming that she never said that. Notwithstanding that Defendant Clinton's motion pursuant to Rule 12(b)(6), this is clearly provable. Plaintiffs must be afforded the opportunity to conduct discovery to that effect, and as such, Defendant Clinton's motion on the grounds that the statements were not "provably false" must be denied.

///

///

### iii.      The Self Defense Privilege is Not Applicable

Defendant Clinton next asserts the "self-defense" privilege to defamation, which is entirely inapplicable since Plaintiffs have not made any sort of "false and potentially damaging attack on [her] reputation." Def's Mtn. at 16. Instead, all Plaintiffs have done is inform the public what Defendant Clinton falsely told them was the cause of the Benghazi attack at Joint Base Andrews. This cannot possibly be construed as attack on Defendant Clinton, since they are Defendant Clinton's own words!

Ironically, the cases that Defendant Clinton set forth in support bolster Plaintiffs' position. In *Washburn v. Lavoie*, 437 F.3d 84 (D.C. Cir. 2006), the U.S. Court of Appeals for the District of Columbia Circuit held that the defendants could properly assert the self-defense privilege only after the plaintiff had placed defendants' interests under "serious attack from the missives fired off by [plaintiff]." *Id*. at 90. Indeed, in *Washburn*, only after the plaintiff had "documented his complaints in three lengthy letters directed to Julianne Fultz, Georgetown University's Coordinator of Off-Campus Student Life, and Nancy Itteilag, the students' landlord," *id*. at 87, and threatened to sue the defendants for common law nuisance repeatedly that the defendants actually made any statements that were even allegedly defamatory. The court held that the defendants' statements were "a necessary part of their defense or fairly arose out of the charges made against them." *Id*. at 90. (internal quotations omitted). In *Washburn,* the plaintiff was clearly the aggressor who threatened the interests of the student defendants. Here, Plaintiffs did no more than publically repeat Defendant Clinton's own false words—that the Benghazi attack was perpetrated in response to an internet video criticizing the prophet Muhammad.

In the unlikely event, however, that this Court finds that Plaintiff's republication of Defendant Clinton's own statements triggers the self-defense privilege (which it does not), whether Defendant Clinton abused the privilege by malice or excessive publication is a "question of fact for the jury." *Novecon Ltd. v. Bulgarian-American Enter. Fund*, 190 F.3d 556, 566 (D.C. Cir. 1999). Thus, it is improper to dismiss on this basis at this state of litigation particularly, before Plaintiffs have had a chance to take discovery. However, as pled, Plaintiffs' complaint demonstrates both express malice and excessive publication. And before the Court is simply a Rule 12(b)(6) motion to dismiss, which does not and cannot reach the merits of Defendant Clinton's alleged defenses.

Plaintiffs already pled four occasions in which Defendant Clinton accused Plaintiffs of lying, and crucially, pled that the examples given are not exhaustive. Comp. ¶ 23 ("These occasions include, but are not limited to….") Plaintiffs should, at a minimum, be allowed to take discovery of Defendant Clinton to determine additional instances. Even more, Plaintiffs have demonstrated that Defendant Clinton acted "without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." *Moss v. Stockard*, 580 A.2d 1011, 1025 (D.C. 1990). Indeed, Plaintiffs had only recently suffered the loss of their sons in the Benghazi attack, which Defendant Clinton had a role in. Now, Defendant Clinton, in an attempt to silence and discredit Plaintiffs over the deaths of their sons, in order to serve her own political interests and aspirations of the presidency, accuse Plaintiffs of being liars. This is clear "reckless disregard as to its results or effects upon the rights or feelings of others," *id*., and express malice. Lastly, as Defendant Clinton does not, and could not possibly, assert that Plaintiffs are public figures, any discussion of actual malice would be entirely irrelevant. Defendant Clinton has clearly defamed Plaintiffs.

### iv.         Plaintiffs Have Properly Alleged Damages

As Defendant Clinton concedes, proof of special harm is not necessary if a defamatory statement is defamatory *per se*. "A statement is defamatory as a matter of law ("defamatory per se") if it is so likely to cause degrading injury to the subject's reputation that proof of that harm is not required to recover compensation." *Franklin v. Pepco Holdings, Inc.*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012). A statement will generally be held to be defamatory *per se*, and therefore not require special damages, if it imputes to a "matter adversely affecting the person's ability to work in a profession." *Id*. Here, statements portraying Plaintiffs as liars and dishonest persons clearly adversely affect Plaintiffs' ability to be employed.

Furthermore, regardless of whether Defendant Clinton's statements are defamatory *per se*, Plaintiffs have indeed pled special damages. "As a direct and proximate result of Defendant Clinton's statements, Plaintiffs have suffered <u>pecuniary damage</u>, as well as injury to reputation, impairment to standing in their community, personal humiliation, pain and suffering, and emotional distress." Comp. ¶ 37. (emphasis added). Defendant Clinton relies on *Xereas v. Heiss*, 933 F. Supp. 2d 1 (D.D.C. 2013) to allege that Plaintiffs did not properly allege special damages, but Defendant Clinton's reliance is misplaced. In *Xereas*, the plaintiff merely alleged that the defamatory statements "harmed Plaintiff, his personal and professional reputation and his future business prospects." *Id*. at 19. The *Xereas* court emphasized that "[s]imply asserting the risk of future harm is insufficient. Xereas must allege some specific harm and the actual pecuniary loss arising from that harm." *Id*. Here, Plaintiffs do not simply allege future harm. Indeed, Plaintiffs specifically allege damage to reputation, and the pecuniary harm that flows from it. *See* Comp. ¶ 37. Alternatively, in the event that this Court finds that Plaintiffs did not properly plead special damages, dismissal is not warranted and Plaintiffs respectfully request leave to amend.

### b.      Plaintiffs' Properly Pled False Light Claim

Defendant Clinton contends that Plaintiffs' false light claim should be dismissed on the same grounds as Plaintiffs' defamation claim. To that extent, Plaintiffs hereby incorporate by reference arguments set forth above, *supra* section III(a), as if set forth in full.

### c.      Plaintiffs' Properly Pled Intentional Infliction of Emotional Distress Claim

"To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013). Defendant Clinton's argument rests primarily on the assertion that Plaintiffs have not alleged the element of extreme and outrageous conduct." Def's Mtn. at 20. Defendant Clinton chooses not to, at this time, respond to Plaintiffs' intentional infliction of emotional distress claim to the extent that it is based on Defendant Clinton's use of her private e-mail server, *id.*, likely pending resolution of the United States' motion for substitution. However, Defendant Clinton's public statements, calling Plaintiffs liars over the deaths of their sons, in and of themselves also rise to the level of "outrageous" and "atrocious" conduct that properly support a claim for intentional infliction of emotional distress.

Importantly, Defendant Clinton provides no on-point case law, outside of cases merely defining the elements of intentional infliction of emotional distress, in support of her own motion to dismiss that would suggest that her conduct does not constitute "outrageous" and "atrocious" behavior. Indeed, Defendant Clinton's assertion is that she "couched [the statements accusing Plaintiffs of lying] in expressions of *sympathy* for Plaintiffs, and she did not accuse Plaintiffs of lying." *Id*. Not only is Defendant Clinton's assertion that she did not accuse Plaintiffs of lying improperly contravening Plaintiffs' well-pled facts, it is also provably false, as discussed

previously in *supra* section III(a).   Moreover, the fact that Defendant Clinton politically "couched" her accusations in supposed expressions of sympathy does not render her conduct not "outrageous" and "atrocious." At the time that Defendant Clinton made these statements, she was amidst her presidential campaign. Her accusations that Plaintiffs were lying were clearly intended to try to cover up her own wrongful actions during the Benghazi attacks and to attempt to destroy Plaintiffs' credibility in the public eye in order to bolster her chances of winning the presidential election. Thus, even assuming that Defendant Clinton did politically "couch" her accusations in supposed expressions of sympathy, the bottom line remains unchanged. Plaintiffs are the parents of fallen American heroes who lost their lives during the night of the Benghazi attack. Immediately after experiencing this life-shattering tragedy, Plaintiffs are falsely told by Defendant Clinton that the deaths of their beloved sons was caused by reaction to an internet video criticizing the prophet Muhammad, and that the creator of the video would be punished. **Exhibit A**. As it turned out, however, Defendant Clinton knew almost immediately that the Benghazi attack had nothing to do with the internet video criticizing the prophet Muhammad, but was instead a planned, premeditated terrorist attack. Comp. ¶ 24. As reports of Defendant's Clinton's knowledge of the cause of Benghazi attack filtered out, and Plaintiffs were cast into the public eye as a result of the tragic loss of their sons and Defendant Clinton's false explanation as to the cause their deaths, Defendant Clinton—adding insult to injury—engaged in a campaign of smearing Plaintiffs and calling them liars in order to attempt to salvage her now failed presidential campaign. Considering that Plaintiffs had just suffered through the deaths of their sons, Defendant Clinton's efforts to further minimize the deaths and paint Plaintiffs as liars for speaking out on the truth in order to protect her own interests are nothing short of "outrageous" and "atrocious."

Lastly, Defendant Clinton's assertion that Plaintiffs do not allege severe emotion distress is nothing more than a red herring meant to again confuse the Court. Reading the Complaint as a whole, Plaintiffs clearly allege that:

> As a direct and proximate result of Defendant Clinton's negligent and reckless handling of confidential information relating to matters of national security, including and not limited to the location of the covert and other government operations that the deceased were part of, Tyrone Woods and Sean Smith were killed, as well as defaming and holding Plaintiffs in a false light, thereby causing serious emotional distress to Plaintiffs.

Comp. ¶ 56. Thus, Defendant Clinton's statement that Plaintiffs "do not allege any severe emotional distress resulting from Secretary Clinton's public statements…" is patently false. Def's Mtn. at 21. Furthermore, even if Plaintiffs' intentional infliction of emotional distress cause of action was read independently, it clearly alleges that Plaintiffs' severe emotional distress "stems" from the deaths of their sons. Comp. ¶ 52. The verbiage used does not mean that the deaths of their sons are the sole source of Plaintiffs' emotional distress, but rather the events, such as Defendant Clinton's defamatory remarks, that stemmed from the deaths.

## IV.   **CONCLUSION**

Based on the foregoing, this Court must deny Defendant Clinton's Rule 12(b)(6) Motion to Dismiss. Plaintiffs respectfully request that the Court rule on Defendant Clinton's motion in a politically neutral fashion, as Defendant Clinton, like everyone else before the Court, is not above the law. To treat her differently than others would be treated would create and perpetuate a terrible precedent, as the American people have come to believe that, in effect, there are two systems of justice; one for the political elite establishment, and one for the rest of the citizens of our nation. Importantly, John Adams, out great Founding Father and second American president, in signing the Declaration of Independence, proclaimed that we were to be a "nation of laws and not men [and women]."

Dated: December 8, 2016                    Respectfully submitted,

                                           */s/ Larry Klayman*
                                           Larry Klayman, Esq.
                                           The Klayman Law Group
                                           D.C. Bar No. 334581
                                           2020 Pennsylvania Ave. NW, Suite 800
                                           Washington, DC 20006
                                           Tel: (310) 595-0800
                                           Email: leklayman@gmail.com

                                           Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I, Larry Klayman, counsel for Plaintiffs hereby certify that on this day, December 8, 2016, a copy of the foregoing was filed via this Court's ECF system and served upon all parties and/or counsel of record.

/s/ Larry Klayman
Larry Klayman

EXHIBIT A

## AFFIDAVIT OF PLAINTIFF CHARLES WOODS

I, Charles Woods, declare as follows:

1.      I am the father of Tyrone Woods, the American American Navy SEAL who was killed during the September 11, 2012 Benghazi Attack ("Benghazi Attack")

2.      On September 14, 2012, Defendant Hillary Clinton ("Defendant Clinton") met privately with the family members of the four Americans who were killed during the Benghazi Attack, including Plaintiff Patricia Smith and myself, at Joint Base Andrews in Maryland.

3.      During the September 14 meeting, Defendant Clinton falsely told me that the Benghazi Attack was the result of an anti-Muslim video that had been posted online and that the creator of the video would be arrested.

4.      During the September 14 meeting, I contemporaneously recorded my interaction with Defendant Clinton by writing in my diary, stating that, "I gave Hillary a hug and shook her hand and she said we are going to have the film maker arrested who was responsible for the death of my son." A true and correct copy of this diary entry is attached hereto as **Exhibit B**.

5.      Subsequently, during Defendant Clinton's presidential campaign, Defendant Clinton engaged in a pattern and practice of negligently, recklessly, and/or maliciously defaming me by directly calling me a liar and/or strongly implying that I lied about what Defendant Clinton told me was the cause of the Benghazi Attack.

6.      There are <u>at least </u>four separate occasions on which Defendant Clinton made these defamatory statements, including but not limited to:

    a.      **December 6, 2015** – *Interview with ABC's George Stephanopoulos* – Defendant Clinton flat out falsely denied telling the families of Benghazi victims that the YouTube video caused the attack. After George Stephanopoulos asked Defendant Clinton, "Did you tell

them it was about the film?", Defendant Clinton responded, "No. You know, look I understand the continuing grief at the loss that parents experienced with the loss of these four brave Americans. And I did testify, as you know, for 11 hours. And I answered all of these questions. Now, I can't -- I can't help it the people think there has to be something else there. I said very clearly there had been a terrorist group, uh, that had taken responsibility on Facebook, um, between the time that, uh, I – you know, when I talked to my daughter, that was the latest information; we were, uh, giving it credibility. And then we learned the next day it wasn't true. In fact, they retracted it. This was a fast-moving series of events in the fog of war and I think most Americans understand that.

      b.      **December 30, 2015** – *Conway Daily Sun Editorial Board Meeting* – Defendant Clinton directly branded Plaintiffs as liars. After Conway Daily Sun columnist Tom McLaughlin pointed out discrepancies in Defendant Clinton's private and public comments about the cause of the Benghazi Attack, and referenced Defendant Clinton's interview with George Stephanopoulos where Defendant Clinton denies telling Plaintiffs that the Benghazi Attacks were caused by the YouTube video, McLaughlin asks, "Somebody is lying. Who is it?". Clinton responds, "Not me, that's all I can tell you."

      c.      **March 9, 2016** – *Democratic Presidential Debate* – When asked about Plaintiff Smith's allegation that Defendant Clinton lied to her by blaming the Benghazi Attack on the YouTube video, Defendant Clinton responded by saying, "I feel a great deal of sympathy for the families of the four brave Americans that we lost at Benghazi, and I certainly can't even imagine the grief that she has for losing her son, but she's wrong. She's absolutely wrong."

      d.      **July 31, 2016** – *Interview with Chris Wallace of Fox News Sunday* – Defendant Clinton stated, "Chris, my heart goes out to both of them. Losing a child under any circumstances, especially in this case, two State Department employees, extraordinary men both

of them, two CIA contractors gave their lives protecting our country, our values. I understand the grief and the incredible sense of loss that can motivate that. As other members of families who lost loved ones have said, that's not what they heard, I don't hold any ill feeling for someone who in that moment may not fully recall everything that was or wasn't said."

7.      As a direct result of Defendant Clinton's defamatory statements, the injuries that I have suffered include, but are not limited to, pecuniary damage, including my ability to work, as well as injury to reputation, impairment to standing in my community, personal humiliation, pain and suffering, and emotional distress.

I declare under penalty of perjury, under the laws of the District of Columbia, that the foregoing is true and correct.

Executed on December 8, 2016 at Portland, OR.


_____/s/ *Charles Woods*_____
Charles Woods

## AFFIDAVIT OF PLAINTIFF PATRICIA SMITH

I, Patricia Smith, declare as follows:

1.      I am the mother of Sean Smith, the American U.S. Foreign Service member and Information Programs Officer, U.S. Consulate General, U.S. Department of State who was killed during the September 11, 2012 Benghazi Attack ("Benghazi Attack")

2.      On September 14, 2012, Defendant Hillary Clinton ("Defendant Clinton") met privately with the family members of the four Americans who were killed during the Benghazi Attack, including Plaintiff Charles Woods and myself, at Joint Base Andrews in Maryland.

3.      During the September 14 meeting, Defendant Clinton falsely told me that the Benghazi Attack was the result of an anti-Muslim video that had been posted online and that the creator of the video would be arrested.

4.      Subsequently, during Defendant Clinton's presidential campaign, Defendant Clinton engaged in a pattern and practice of negligently, recklessly, and/or maliciously defaming me by directly calling me a liar and/or strongly implying that I lied about what Defendant Clinton told me was the cause of the Benghazi Attack.

5.      There are <u>at least</u> four separate occasions on which Defendant Clinton made these defamatory statements, including but not limited to:

   a.      **December 6, 2015** – *Interview with ABC's George Stephanopoulos* – Defendant Clinton flat out falsely denied telling the families of Benghazi victims that the YouTube video caused the attack. After George Stephanopoulos asked Defendant Clinton, "Did you tell them it was about the film?", Defendant Clinton responded, "No. You know, look I understand the continuing grief at the loss that parents experienced with the loss of these four brave Americans. And I did testify, as you know, for 11 hours. And I answered all of these questions. Now, I can't -

- I can't help it the people think there has to be something else there. I said very clearly there had been a terrorist group, uh, that had taken responsibility on Facebook, um, between the time that, uh, I – you know, when I talked to my daughter, that was the latest information; we were, uh, giving it credibility. And then we learned the next day it wasn't true. In fact, they retracted it. This was a fast-moving series of events in the fog of war and I think most Americans understand that.

    b.  **December 30, 2015** – *Conway Daily Sun Editorial Board Meeting* – Defendant Clinton directly branded Plaintiffs as liars. After Conway Daily Sun columnist Tom McLaughlin pointed out discrepancies in Defendant Clinton's private and public comments about the cause of the Benghazi Attack, and referenced Defendant Clinton's interview with George Stephanopoulos where Defendant Clinton denies telling Plaintiffs that the Benghazi Attacks were caused by the YouTube video, McLaughlin asks, "Somebody is lying. Who is it?". Clinton responds, "Not me, that's all I can tell you."

    c.  **March 9, 2016** – *Democratic Presidential Debate* – When asked about Plaintiff Smith's allegation that Defendant Clinton lied to her by blaming the Benghazi Attack on the YouTube video, Defendant Clinton responded by saying, "I feel a great deal of sympathy for the families of the four brave Americans that we lost at Benghazi, and I certainly can't even imagine the grief that she has for losing her son, but she's wrong. She's absolutely wrong.

    d.  **July 31, 2016** – *Interview with Chris Wallace of Fox News Sunday* – Defendant Clinton stated, "Chris, my heart goes out to both of them. Losing a child under any circumstances, especially in this case, two State Department employees, extraordinary men both of them, two CIA contractors gave their lives protecting our country, our values. I understand the grief and the incredible sense of loss that can motivate that. As other members of families who lost

loved ones have said, that's not what they heard, I don't hold any ill feeling for someone who in that moment may not fully recall everything that was or wasn't said."

6.      As a direct result of Defendant Clinton's defamatory statements, the injuries that I have suffered include, but are not limited to, pecuniary damage, including my ability to work, as well as injury to reputation, impairment to standing in my community, personal humiliation, pain and suffering, and emotional distress.

I declare under penalty of perjury, under the laws of the District of Columbia, that the foregoing is true and correct.

Executed on December 8, 2016 at San Diego, CA.


_____/s/ *Patricia Smith*_____
Patricia Smith

EXHIBIT B



2012

Ritz Carlton- Andrews-

SEPTEMBER 10 – 16

WEEK 37

257/109                                            Thursday 13

Redacted

258/108                                             Friday 14

Redacted

259/107                                            Saturday 15
Declaration of Independence (M)

U of O Tennesse State — 12' noon
I gave Hillary a hug and shook her
hand, and she said we are going to
have the film maker arrested who was
responsable for the death of my son

260/106                                            Sunday 16
Independence Day (M)
Rosh Hashanah begins at sundown
● NM

Someone had to make the decision not to save Ty