**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PATRICIA SMITH and CHARLES
WOODS,

      Plaintiffs,

      v.

HILLARY RODHAM CLINTON,

      Defendant.

No. 1:16-cv-01606-ABJ

**DEFENDANT HILLARY RODHAM CLINTON'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Amy Mason Saharia (D.C. Bar No. 981644)
Stephen L. Wohlgemuth (D.C. Bar No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Defendant Hillary Rodham Clinton*

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................1

I.      Plaintiffs Fail To State a Claim for Defamation or False Light...........................................1

        A.      Secretary Clinton's Statements Are Not Defamatory...............................................2

        B.      Secretary Clinton's Statements Are Not Provably False. .......................................5

        C.      Secretary Clinton's Statements Were Privileged....................................................7

        D.      Plaintiffs Do Not Allege Special Harm. ................................................................8

II.      Plaintiffs Fail To State a Claim for Intentional Infliction of Emotional Distress or
        Negligent Infliction of Emotional Distress. ........................................................................9

CONCLUSION....................................................................................................................11

## INTRODUCTION

Plaintiffs' opposition fails to overcome the numerous flaws in their claims of defamation, false light, intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiffs recognize as much in their opposition: they seek leave to conduct discovery to bolster their deficient allegations of defamatory statements, they improperly cite affidavits attached to their brief, and they request leave to amend their complaint in order to satisfy Rule 8's demands.[1] No amount of discovery or re-pleading, however, can alter the content of the four statements that Plaintiffs allege to be actionable. For the reasons set forth in Secretary Clinton's motion to dismiss, those statements cannot support a claim of defamation, false light, or intentional or negligent infliction of emotional distress. Secretary Clinton respectfully submits that the complaint should be dismissed with prejudice.

## ARGUMENT

### I.   Plaintiffs Fail To State a Claim for Defamation or False Light.

As set forth in Secretary Clinton's motion to dismiss, Plaintiffs' claims for defamation and false light fail for four reasons: (1) Secretary Clinton did not make a "defamatory statement concerning" Plaintiffs; (2) Secretary Clinton's statements are not provably "false"; (3) Secretary Clinton's statements are covered by the privilege of self-defense; and (4) Plaintiffs fail to allege special

---

[1] *See* Pls.' Opp. to Mot. to Dismiss, Dkt. 34 ("Opp.") at 2 ("The Complaint sets forth four instances of Defendant Clinton's defamatory allegations, but also pleads that this list is not exhaustive, thereby necessitating discovery."); *id.* at 1 (citing to affidavits of Plaintiffs); *id.* at 13 ("[I]n the event that this Court finds that Plaintiffs did not properly plead special damages, dismissal is not warranted and Plaintiffs respectfully request leave to amend.").

harm.  *See* Def. Hillary Rodham Clinton's Mot. to Dismiss, Dkt. 28 ("Mot.").[2]  Plaintiffs' responses to these arguments fall short.

### A.      Secretary Clinton's Statements Are Not Defamatory.

*Two statements are not "concerning" Plaintiffs.*  Two of the statements on which Plaintiffs base their claim are not "concerning" Plaintiffs.  *Coles v. Wash. Free Weekly, Inc.*, 881 F. Supp. 26, 33 (D.D.C. 1995), *aff'd per curiam*, 88 F.3d 1278 (D.C. Cir. 1996).  The December 6, 2015 statement to Mr. Stephanopoulos and the December 30, 2015 statement to Mr. McLaughlin do not satisfy this standard.  In both statements, Secretary Clinton focused solely on her own recollection of the meeting at Joint Base Andrews and did not address Plaintiffs' version of events.  Compl. ¶ 23(a), (b).

According to Plaintiffs, it is irrelevant that Secretary Clinton did not discuss "Plaintiffs' recollection or suggest[] a reason for" their differing accounts of the meeting because a viewer would nonetheless conclude that she was accusing Plaintiffs of lying.  *See* Opp. at 6–7.  That argument, if accepted, would turn every public dispute about historical events into a potential defamation claim.  Secretary Clinton's articulation of her recollection of what happened at Joint Base Andrews did not accuse Plaintiffs of lying.  To do that, her statements would have to, at the very least, mention "Plaintiffs' recollection" of the meeting and then "suggest[] a reason for" why Plaintiffs have a different story—namely, she would have to suggest that they were being dishonest. She did not do so.

---

[2] Plaintiffs' false light claim fails for the same reasons as their defamation claim.  *See Armstrong v. Thompson*, 80 A.3d 177, 188 (D.C. 2013) (false light claims and defamation claims should be analyzed "in the same manner").

*The other two statements are not capable of defamatory meaning.*  Plaintiffs fail to show that the two statements that do reference Plaintiffs' version of events—the March 9, 2016 statement at the Democratic Party primary debate and the July 31, 2016 statement to Mr. Wallace— were "capable of defamatory meaning." *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1091 (D.C. Cir. 2007) (internal quotation marks omitted).  To meet this "high standard," a statement "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous." *Fleming v. AT&T Info. Servs., Inc.*, 878 F.2d 1472, 1475 (D.C. Cir. 1989) (internal quotation marks omitted).  In deciding whether a statement is reasonably capable of defamatory meaning, context is critical.  *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001).

In the two statements at issue, Secretary Clinton only said Plaintiff Smith was "wrong" about what happened at the meeting at Joint Base Andrews and that Plaintiffs "may not fully recall everything that was or wasn't said" at the meeting.  Compl. ¶ 23(c), (d).  She did not state that they were lying.  Standing alone, these statements do not make Plaintiffs "appear odious, infamous, or ridiculous" since they do not invoke "hatred or loathing" for Plaintiffs, do not bring them "disgrace or dishonor," and do not subject them to "scornful laughter."  *Klayman*, 783 A. 2d at 618.  Instead, the statements at most suggest that Plaintiffs were mistaken, and that their disagreement over what happened in the meeting was due to a differing memory, not some "moral flaw" in their character.  Dan B. Dobbs, et al., *The Law of Torts* § 525 (2d ed. 2011).  This conclusion becomes all the more apparent given the full context of Secretary Clinton's statements, in which she recognized Plaintiffs' "grief" and "incredible sense of loss."  Compl. ¶ 23(c), (d).

*Plaintiffs have not adequately alleged defamation by implication.*  Plaintiffs' defamation and false light claims hinge on their allegation that Secretary Clinton called Plaintiffs "liars."  As they concede in their opposition, however, she "did not expressly use the word 'liar.'"  Opp. at 7.

3

Plaintiffs must therefore meet the standard for "defamation by implication," which demands an "especially rigorous showing." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1339 (D.C. Cir. 2015) (internal quotation marks omitted).  In defamation-by-implication cases, the allegedly defamatory statement must itself supply "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference." *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990).  Only then can the communication be deemed capable of bearing the implied defamatory meaning. *Id.* at 519–20.

As explained in Secretary Clinton's motion to dismiss, Plaintiffs have not alleged that a reasonable person would construe Secretary Clinton's statements to imply that Plaintiffs are liars, and nothing in her statements suggests that she intended or endorsed that implication.  Mot. at 10–11.  In response, Plaintiffs argue that (1) Secretary Clinton implied that Plaintiffs were liars by simply "contradicting" them about what happened at Joint Base Andrews; and (2) Secretary Clinton adopted or endorsed that inference by making her statements during the "presidential campaign."  Opp. at 7.  This argument fails at both steps.

Plaintiffs must first show that "a reasonable person of ordinary intelligence" would "understand the fair and natural meaning" of Secretary Clinton's statements to be that Plaintiffs are "liars." *Klayman*, 783 A.2d at 618.  But as any "reasonable person of ordinary intelligence" knows, *id.*, two persons' recollections of an event might "contradict" for any number of benign reasons, Opp. at 7.  Here, Secretary Clinton identified one:  she suggested that Plaintiffs had a different account of the meeting not because they were lying, but because "in that moment"—in an emotional meeting shortly after losing their sons—Plaintiffs "may not fully recall everything that was or wasn't said."  Compl. ¶ 23(d).  The full context of the statements further underscores this point:  Secretary Clinton sympathized with Plaintiffs and said that she does not "hold any ill feeling" for

4

them.  *See id.* ¶ 23(a), (c), (d); Mot., Exs. B–E.  A reasonable person viewing the statements in context would not understand Secretary Clinton to be implying that Plaintiffs were liars.  *See Klayman*, 783 A.2d at 618.

Even if Plaintiffs could clear that hurdle (and they cannot), they still must show that Secretary Clinton's statements supply affirmative evidence that she intended or endorsed the implied defamatory meaning.  *White*, 909 F.2d at 520.  Plaintiffs' argument on this point is a puzzling one: they assert that, because Secretary Clinton's statements were made during a "presidential campaign," she had to be "politically shrewd" and could not directly call Plaintiffs liars.[3]  Opp. at 7. That argument simply does not respond to the applicable standard:  as mentioned, Plaintiffs must point to something "affirmative" in Secretary Clinton's four statements showing that she "*intend[ed]* or *endorse[d]* the defamatory inference.*"  White*, 909 F.2d at 520.  Plaintiffs make no effort to meet this standard—nor could they if they tried.  Secretary Clinton repeatedly expressed sympathy for Plaintiffs, said that she did not hold any "ill feeling" toward them, and suggested that, to the extent they remember the meeting differently, it was because of faulty memory, not mendacity.  *See* Compl. ¶ 23.  In short, there is nothing in the four statements suggesting that Secretary Clinton believed or endorsed the view that Plaintiffs are liars.

**B.      Secretary Clinton's Statements Are Not Provably False.**

Plaintiffs' opposition also fails to demonstrate that Secretary Clinton made statements that are "provable as false."  *Rosen v. Am. Isr. Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012) (internal quotation marks omitted).  To give rise to a defamation claim, a statement must

---

[3] As a general matter, of course, the political context in which Secretary Clinton made the at-issue statements renders it *more difficult* for Plaintiffs to prove a defamation claim.  *See New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (noting our country's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open").

include "an explicit or implicit factual foundation" that is "objectively verifiable." *Id.* (internal

quotation marks omitted).  In this case, Plaintiffs' defamation and false light claims depend on

their allegation that Secretary Clinton "lied to Plaintiffs and the public at large [by stating] that the

Benghazi Attacks were caused by Islamic reaction over an anti-Muslim YouTube video that had

been posted on the internet."  Compl. at 2.  As Secretary Clinton's motion pointed out, the cause

of the attack is unknowable.  Mot. at 12–13.  Even after years of well-funded government investi-

gations, "the intelligence was and remains conflicting about the identities, affiliations, and moti-

vations of the attackers."[4]  *See* Mot., Ex. A (U.S. House of Representatives Permanent Select

Committee on Intelligence, *Investigative Report on the Terrorist Attacks on U.S. Facilities in Ben-

ghazi, Libya* (Nov. 21, 2014)).  Thus, the issue of whether Secretary Clinton "lied" to Plaintiffs

about the cause of the attack is therefore "not objectively verifiable."  *Rosen*, 41 A.3d at 1256.

In response, Plaintiffs claim that their defamation allegations "center[] around what De-

fendant Clinton told Plaintiffs about the cause of the Benghazi attack," arguing that "the <u>actual</u>

cause of the Benghazi attack is irrelevant."  Opp. at 9.  But this argument contradicts Plaintiffs'

complaint, which repeatedly alleges that Secretary Clinton "lied" to Plaintiffs because she "knew"

that the video was "not the cause of the attack."  Compl. at 2; *see also id.* ¶ 19 ("During the private

meeting, Defendant Clinton lied to Plaintiffs and told Plaintiffs that the Benghazi Attack was the

result of the anti-Muslin YouTube video . . . ."); *id.* ¶ 24 ("Defendant Clinton knew from the very

beginning that the Benghazi Attack was not caused by the YouTube video, but was rather a

planned, premeditated terrorist attack.").  Plaintiffs have put the "actual cause" of the Benghazi

---

[4] Plaintiffs take issue with Secretary Clinton citing her testimony as support for this proposition. But there is no need to rely on Secretary Clinton's analysis:  bipartisan sources, such as the cited report written by Chairman Mike Rogers and Ranking Member C.A. Dutch Ruppersberger of the House Permanent Select Committee on Intelligence, reached the same conclusion.  *See* Mot., Ex. A.

attack at the heart of this case.  They cannot save their defamation and false light claims by amending them in an opposition brief.

### C.     Secretary Clinton's Statements Were Privileged.

A defendant may rely on the self-defense privilege "'if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the [defendant], and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.'"  *Washburn v. Lavoie*, 437 F.3d 84, 90 (D.C. Cir. 2006) (quoting Restatement (Second) of Torts § 594 (1977)).  Both elements are easily satisfied here:  Plaintiffs publicly called Secretary Clinton a liar, which was an attack on an "important interest"; and her statements in response were "of service" in defending that interest, as she denied Plaintiffs' allegations when asked directly about them by members of the news media.  Mot. at 13–14.

Addressing the first element, Plaintiffs claim that they did not perpetrate an "attack on Defendant Clinton" since they "did no more than publically repeat Defendant Clinton's own false words."  Opp. at 11.  But Plaintiffs did much more than simply "repeat" Secretary Clinton's words: they publicly called Secretary Clinton a liar.  In an interview, Plaintiff Smith said, "she lied.  She absolutely lied."  *See* Mot., Ex. B.  Similarly, Plaintiff Woods said, "Either she was lying to the prime minister, or she was lying to me and to the American public."  *Id.*  These are just the sort of attacks on reputation that trigger the self-defense privilege.  As the D.C. Court of Appeals has held, a person has the right to protect herself "from what [she] [sees] as a false and potentially damaging attack on [her] reputation."  *Novecon Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556, 570 n.5 (D.C. Cir. 1999).  That is exactly what Secretary Clinton did in each of the four statements at issue.

Plaintiffs next argue that Secretary Clinton forfeited the privilege.  This showing is "very difficult" for a plaintiff to make, and Plaintiffs cannot make it here.  *Id.* at 570.  They first argue that Secretary Clinton has forfeited the privilege through "excessive publication," but they do not

identify any non-privileged publication, as is necessary to satisfy this exception. *See Washburn*, 437 F.3d at 91–92. Instead, they assert that they should be allowed "to take discovery" to determine if other publications exist. Opp. at 12. By "arguing that [they] require[] discovery at the motion-to-dismiss stage, [Plaintiffs] essentially concede[] that [their] allegations . . . are based on speculation." *Patrick v. D.C.*, 179 F. Supp. 3d 82, 89 (D.D.C. 2016). Plaintiffs' second argument—that Secretary Clinton acted with "express malice"—merely repeats their contention that Secretary Clinton "accuse[d] Plaintiffs of being liars." Opp. at 12. As demonstrated above, Secretary Clinton did not expressly or impliedly call Plaintiffs liars, *see supra* 3–5, and so Plaintiffs have failed to allege the "bad faith or evil motive" necessary to establish express malice, *Moss v. Stockard*, 580 A.2d 1011, 1026 n.29 (D.C. 1990).

> **D.     Plaintiffs Do Not Allege Special Harm.**

To state a defamation claim, a plaintiff must allege either defamation *per se* or special harm. *Franklin v. Pepco Holdings, Inc. (PHI)*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012). Plaintiffs cannot establish defamation *per se* because Secretary Clinton did not make a statements about Plaintiffs relating to any criminal conduct, sexual misconduct, their carrying of a "repugnant disease," or their "ability to work in a profession." *Id.* And Plaintiffs have not adequately pleaded special harm because their damages allegations were not made with the requisite specificity. Mot. at 16–17.

As to defamation *per se*, Plaintiffs claim that Secretary Clinton's statements "adversely affect[ed] Plaintiffs' ability to be employed." Opp. at 13. Tellingly, however, Plaintiffs do not cite or quote the complaint in advancing that argument. For good reason: the complaint fails to mention Plaintiffs' professions or explain how Secretary Clinton's statements hampered the pursuit of those professions. Instead, the complaint contains only generalized allegations about injury to reputation, which are "insufficient to render [a defendant's statements] defamatory *per se*."

*Franklin*, 875 F. Supp. 2d at 75; *see also Xereas v. Heiss*, 933 F. Supp. 2d 1, 19 (D.D.C. 2013) (dismissing defamation claim for failing to allege defamation *per se* or special harm despite the bare allegation that "the statements have harmed Plaintiff, his personal and professional reputation and his future business prospects").

Plaintiffs' arguments on "special harm" fare no better.  The best Plaintiffs can do is to point to their generic allegation that they "have suffered pecuniary damage, as well as injury to reputation, impairment to standing in their community, personal humiliation, pain and suffering, and emotional distress."  Opp. at 13.  That conclusory assertion does not suffice.  Plaintiffs "must allege some *specific harm* and the actual pecuniary loss arising from that harm."  *Xereas*, 933 F. Supp. 2d at 19 (emphasis added) (internal quotation marks omitted); *see also FAA v. Cooper*, 132 S. Ct. 1441, 1451 (2012) (special harm "must be specially pleaded and proved").  Without additional detail, Plaintiffs' defamation and false light claims must be dismissed for failure to allege special harm.

## II. Plaintiffs Fail To State a Claim for Intentional Infliction of Emotional Distress or Negligent Infliction of Emotional Distress.

Plaintiffs try to salvage their claim for intentional infliction of emotional distress by yoking it to their defamation claim.  Opp. at 14.  Like their defamation claim, the claim of intentional infliction of emotion distress depends on the allegation that Secretary Clinton called "Plaintiffs liars."  Opp. at 14.  As discussed above, however, Secretary Clinton did not accuse Plaintiffs of lying, either directly or by implication, *see supra* 3–5, and so the defamation claim and the claim for intentional infliction of emotional distress must fall together.  *See Farah*, 736 F.3d at 540 ("Because [the plaintiffs'] defamation claim fails, so do their other tort claims based upon the same allegedly defamatory speech.").

But even setting that defect aside, Plaintiffs' opposition does not overcome the other, independent problems with this claim.  For starters, Secretary Clinton's statements about Plaintiffs were not so "extreme and outrageous" in character as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Steele v. Isikoff*, 130 F. Supp. 2d 23, 36 (D.D.C. 2000) (internal quotation marks omitted).  Secretary Clinton's statements—in which she sympathized with Plaintiffs—involved a matter of great public interest, and were made only after the news media directly confronted Secretary Clinton with Plaintiffs' allegations that she had lied to them about the cause of the Benghazi attack.  In this context, Secretary Clinton's statements do not rise above the sort of "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that cannot support a claim for intentional infliction of emotional distress.  *Charles v. Nat'l Rehab. Hosp.*, No. CIV. A. 94-0171 RMU, 1994 WL 874211, at *8 (D.D.C. Sept. 29, 1994), *aff'd*, 72 F.3d 919 (D.C. Cir. 1995).

Nor have Plaintiffs alleged severe emotional distress.  Plaintiffs' assertion that the complaint alleges that Secretary Clinton's public statements caused them emotional distress, *see* Opp. at 16, is wrong.  The complaint alleges that Plaintiffs' "severe emotional distress stem[s] from the death of Plaintiffs' sons," Compl. ¶ 52, not Secretary Clinton's public statements.  For that reason, the statements cannot support the intentional infliction of emotional distress claim.

Finally, Plaintiffs purport to withdraw their meritless claim of negligent infliction of emotional distress "without prejudice."  *See* Opp. at 3 n.2.  Secretary Clinton respectfully submits that the Court should dismiss the claim of negligent infliction of emotional distress with prejudice, as Plaintiffs have failed to offer any argument on how this claim could be repleaded.

## CONCLUSION

Secretary Clinton respectfully requests that this Court dismiss with prejudice Plaintiffs' claims for defamation, false light, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Respectfully submitted,

/s/ David E. Kendall

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Amy Mason Saharia (D.C. Bar No. 981644)
Stephen L. Wohlgemuth (D.C. Bar No. 1027267)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
dkendall@wc.com
kturner@wc.com
asaharia@wc.com
swohlgemuth@wc.com

*Counsel for Defendant Hillary Rodham Clinton*

December 15, 2016

11

**CERTIFICATE OF SERVICE**

I, David E. Kendall, counsel for Defendant Hillary Rodham Clinton, certify that, on December 15, 2016, a copy of this Reply was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

/s/ David E. Kendall
David E. Kendall